FREDERICK EVERTON, PLAINTIFF IN ERROR, V.
WILLIAM ESGATE, DEFENDANT IN ERROR.

1. **Trial:** NEW TRIAL: EXAMINATION OF JURORS. Where a new trial is sought upon the ground that one of the persons called as a juror had expressed an opinion in regard to the merits of the case a short time before the trial, and an affidavit is filed to that effect, the examination of such person on his *voir dire* must be preserved in the record, so that it may appear that he was interrogated upon that point. The failure to examine a juror on his *voir dire* in regard to any particular matter is a waiver of objection upon that ground, and is not ground of error.

2. ————: ————. Where an affidavit is filed in support of a motion for a new trial, in which the affiant states that during the progress of the trial he had a conversation with one of the jurors in regard to the merits of the case, which affidavit is denied by the juror named, and the court below finds that there was no misconduct of the juror—in effect, that the charge is not sustained—the supreme court ordinarily will not set aside the verdict.

3. **Trespass.** A mere trespass upon the land of another, by driving a span of horses and wagon thereon, will not justify the land owner in using a dangerous or deadly weapon to resist the trespass; and if such land owner shoot at the trespasser and wound him, he will be liable for the damages caused thereby.

4. **Pleading:** DAMAGES. Where special damages are properly pleaded a recovery may be had for the same, although the prayer for relief is general.

ERROR to the district court for Holt county. Tried below before TIFFANY, J.

*Uttley, Benedict & Sisley,* for plaintiff in error, on misconduct of jury, cited: Proffatt on Jury Trials, Sec. 388. Special damages must be pleaded. Maxwell's P. & P., page 90, note. 1 Sutherland on Damages, 763. *Adams v. Barry,* 10 Gray, 361.

*M. F. Harrington,* for defendant in error.

MAXWELL, J.

This action was brought by the defendant in error against the plaintiff to recover damages for an alleged assault and battery. The answer is a general denial. On the trial of the cause the jury returned a verdict in favor of the defendant in error for $1,000, and judgment was entered on the verdict.

The first objection is the misconduct of several jurors named. One Thomas Hudson makes oath that before one Jacob Ernst, one of the jurors, was called to sit in the case, he had a conversation with him, in which he talked over with him all the facts and circumstances connected with the case. Mr. Ernst has filed an affidavit denying that he had any conversation in regard to the case with Mr. Hudson or any one else before or during the trial. The examination of Mr. Ernst on his *voir dire* is not set out in the record. Hence there is nothing to show that the juror was interrogated upon this point. This is necessary where it is sought to show that the juror had formed or expressed an opinion before the trial. The object of the examination is to ascertain the condition of the juror's mind. Therefore, if a party waives his right to examine a person called as a juror, in whole or in part, he cannot thereafter insist upon causes of disqualification which by inquiry he could have discovered. The case would be very different if the proposed juror gave false answers to material questions. But for aught that appears in this record the juror may have informed the parties that he was favorable to one side or the other. Cases, no doubt, sometimes occur where it is known to one of the parties that a juror has formed or expressed an opinion in his favor; yet such party would not necessarily challenge the juror on that ground. The court below undoubtedly did right in disregarding the affidavit of Mr. Hudson.

The affidavit of one Alfred McLeod was also filed in support of the motion for a new trial, in which he states that during the progress of the trial he had a conversation with one Caleb Greenfield, one of the jurors, in which he placed the case of the plaintiff in error in as favorable a light as possible. Mr. Greenfield filed an affidavit in which he substantially denies all the material facts in McLeod's affidavit, and the court below must have found the charge unfounded, and in the condition of the testimony we cannot say this ruling was erroneous.

The plaintiff and defendant each own a timber claim nearly adjoining. On the 24th of July, 1885, the plaintiff in error was shocking wheat on his claim, when the defendant in error called upon him. The defendant in error testified:

A. "I went by Mr. Everton where he was shocking his wheat about half past ten. I told him I was hunting the road to get to that wheat to cut it. He wanted to know what wheat. I told him the wheat on Mr. Ellis' place; if he had no objections I would like to go across there. He said I ought to have rode around on the section lines so we would not trespass on one another. I told him I knowed that, and had been trying to get a road through there. He said I was a damned liar, I had been fighting it down ever since he had been trying to get the road.

Q. Go on and state whether you undertook to go across his land?

A. Yes, sir, it was the 24th day of July.

Q. Just what did you do now?

A. I went up there, me and Mr. Hall, and Mr. Ellis' boy, and Mr. MacElhaney.

Q. What did you go for?

A. To take the harvesting traps and harvester across to my wheat.

Q. What took place?

A.    Mr. Hall was about fifteen or twenty rods ahead of me.

Q.    What did he have?

A.    He had the harvester, and I had the traps in the wagon.    He stopped and was talking to Mr. Everton.

Q.    Where did he stop?

A.    He stopped on the section line at Mr. Everton's tree claim.

Q.    Whose land does the section line divide?

A.    It divides Mr. Crumley's and Mr. Everton's.

Q.    What did you do?

A.    I drove on the left side of Mr. Hall's harvester, and started across Mr. Everton's land.    Everton started to run, I whipped my horses and made them run; he ran a few steps toward me; he stopped running and went to a wheat shock.

Q.    Did he go towards you or from you when he went toward the wheat shock?

A.    He went from me.

Q.    What occurred?

A.    He shot me.

Q.    What did he shoot you with?

A.    With a shot gun.

Q.    How far away was he when he shot you?

A.    About twenty steps.

Q.    How near was he to the shock when he shot?

A.    I could not tell you only what I have been told.

Q.    State whether he had warned you that he was going to shoot you?

A.    No, sir.

Q.    What did Mr. Everton say to you, if anything, upon your arrival on his premises?

A.    He never spoke a word.

Q.    State whether he told you to get off?

A.    No, sir.

Q. How near did he come to you when you were going on the premises when he did this shooting?

A. He was between Mr. Hall and me.

Q. How near was he to you when he was the nearest?

A. About twenty feet, I should judge.

Q. Where did the ammunition take effect in your person?

A. Three shot went into my head and one in my leg."

The plaintiff in error testifies in regard to the affair as follows:

"Mr. Hall came driving up there with the harvester and Mr. Esgate was driving up right behind him with those two young boys, Mr. McElhaney's boy, and Mr. Ellis' boy. They drove right up, Mr. Hall did, and stopped. Mr. Esgate drove right up behind him and stopped. Mr. Hall asked me if he could go across that wheat. I told him he could, or most any other man. I told him that Mr. Esgate could not go across. With that he (Esgate) swung right out to the left and put the whip on to his horses. I thought he was going to effect a crossing. I swung right around and undertook to get hold of the horses and stop them. He put the horses under the whip. I had to fall back. I got almost up to grab the horses, but hadn't time to follow and take hold of them. They were running at such a speed if I had missed them he would certainly run over me, so I had to fall back out of the way.

Q. How far back did the plaintiff stop back of the team, how many paces from the harvester?

A. Well, he might have been within two or three paces, he had to haul his horses right short off and come around the reaper.

Q. He would be back some ten paces, wouldn't he, or near that?

A. No, sir, he wouldn't have been back, his horses' head was up, he wouldn't have been over six or seven paces.

Q.   Go on and state what took place after that?

A.   I hallooed to him as he drove on to hold.   He didn't pay any ·attention, kept urging his horses on.   I had to fall back out of the way.   When I saw I could not check his horses I fell back and made for this shock of wheat where the gun was.   After I got the gun the boys jumped out of the wagon.

Q.   Then what occurred?

A.   I don't know as I really know, I guess I must have shot the gun off.

Q.   Were the boys out of the wagon before you got the gun or afterwards?

A.   They jumped out about the same time.

Q.   Was Esgate up there in the morning before this?

A.   Yes, sir.

Q.   What took place up there then?

A.   He came and drove on to my place; came inside where I was at work shocking up wheat.   The conversation was about like this, he says, "What kind of wheat is. that."

Q.   Never mind about that, just about his coming on the land, just that conversation?"

The plaintiff objects and insists that the witness be allowed to tell the whole matter.

Overruled, plaintiff excepts.

"Q.   Go on and state what took place?

A.   I told him I didn't know, it was some kind of wheat.   He said, I am hunting a road.   I said, There is no road here; I says, It is about time we had some road.   He turns to me and says, I hear you are bucking the section line road.   I said, I guess not.   He says, You are a liar, and I can prove it by old Johnny Emerson.   I told him to hold on with such language.   He accused me of crossing his place.   I told him to go off my place and keep off and let me pursue my work peaceably and quietly.   He said he wouldn't do it; he said he was coming back and go across

there and run over me any way. I told him to keep away and let me alone. He said he wouldn't. Finally he drove off and came back in the afternoon."

The testimony shows that the only practicable way to reach the land of the defendant in error was that over which he was endeavoring to pass. The testimony introduced without objection on the part of the plaintiff in error was in the nature of a justification, and his attorneys in their brief insist upon such justification. As to the essential facts in the case there is practically no dispute in the testimony. The most that can be said is, that the defendant in error committed a trespass upon the plaintiff's land. There was no attempt or intent on his part, so far as appears, to injure the plaintiff or any member of his family, or even his property. A mere trespass upon land will not justify a party in killing the trespasser. *Dukes v. State*, 11 Ind., 557. *State v. Zellers*, 2 Halst, 220. *Com. v. Drew*, 4 Mass., 391. *McDaniel v. State*, 8 Sm. & M., 401. *Wild's Case*, 2 Lewin, 214. Maxwell's Crim. Pro., 225.

In *Hinchcliffe's Case*, 1 Lew., 161, it is said, "a civil trespass will not excuse the firing of a pistol at a trespasser in sudden resentment and anger." These words seem peculiarly applicable in this case. The law furnishes an adequate remedy for a trespass such as that shown by the evidence in this case.

Objection is made to the introduction of testimony showing special damages to the defendant in error, as it is claimed that such damages are not pleaded in the petition. An examination of the petition, however, shows that such damages are pleaded, and that therefore the objection is unavailing.

The testimony shows that the wounds inflicted by the shot were of a serious character, and disabled the defendant in error from carrying on his business for a considerable time, and that he had not fully recovered when the

trial took place. In considering all the testimony the jury seem to have fixed the verdict at much less than they would have been justified in returning, and the verdict is fully sustained by all the evidence. If a party uses a dangerous or deadly weapon unlawfully, to the injury of another, he need not complain if courts and juries require him to make compensation for the injury. There is no material error in the record, and the judgment is clearly right and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.