OMAHA FAIR & EXPOSITION ASSOCIATION ET AL. V.
MISSOURI PACIFIC RAILWAY COMPANY ET AL.

FILED OCTOBER 2, 1894.    No. 4588.

1. **Review:** MISCONDUCT OF JUROR: EVIDENCE.   Where a new
    trial is asked for on the ground of misconduct of a juror or of
    the prevailing party, the finding of the trial court in support of
    the verdict will not be set aside unless the evidence of miscon-
    duct is of a clear and convincing character.

2. **New Trial:** CONVERSATIONS WITH JURORS: EVIDENCE.   While
    all communications during a trial between jurors and persons
    connected with the case are to be avoided, still a verdict should
    not be set aside because a witness has been seen in conversation
    with a juror, where it is made to appear that there was no com-
    munication with reference to the case.

3. **Instructions.**   Where the facts of a case call for the application
    of a specialization of or a limitation of a general rule of law, an
    instruction simply stating the general rule is not erroneous
    where other instructions correctly state the specialization or
    limitation.

4. **Trial:** INSTRUCTIONS.   It is not error to refuse an instruction
    which states to the jury an inference of fact to be drawn from
    the evidence and no rule of law.

5. ——: ——: REVIEW.   Error cannot be predicated upon the
    submission of an issue to the jury when the party alleging such
    error, by a request for an instruction, himself asked the submis-
    sion of the issue.

6. **Railroad Companies:** FIRES: DAMAGES: CONTRIBUTORY
    NEGLIGENCE.   The owner of land cannot be deprived of the
    free enjoyment of his property by the construction of a railroad
    adjacent thereto, and, therefore, his failure to take unusual pre-
    cautions against its destruction by fires negligently set out by
    the railroad cannot be urged as a defense to an action to recover
    for such loss; nor can contributory negligence in such cases be
    predicated upon his proper use of his property in the usual man-
    ner, but the obvious hazard of fires is a fact which he cannot
    disregard, and he is bound to take such precautions as a person
    of ordinary prudence would take for the protection of his prop-
    erty, not against anticipated negligence of the railroad, but
    against such obvious hazards.

7. **Review**: Consolidation of Cases: Joint Motion for New Trial: Affirmance.   Where several cases with different plaintiffs, presenting different states of fact, were, by agreement, tried together, and by stipulation all the plaintiffs joined in one motion for a new trial and in one petition in error, *held*, that the proceedings were indivisible, and that the judgment must be affirmed as to all if free from error as to one.

Error from the district court of Douglas county.  Tried below before Doane, J.

See opinion for citation of authorities.

*Montgomery, Charlton & Hall, Breckenridge, Breckenridge & Crofoot,* and *R. W. Barger,* for plaintiffs in error.

*R. S. Hall* and *B. P. Waggener, contra.*

Irvine, C.

The grounds of the Omaha Fair & Exposition Association lay near a railroad belonging to the Omaha Belt Railway Company, and operated by the Missouri Pacific Railway Company.  A fire started between the tracks of the railroad and the fair grounds, destroying a portion of the fence surrounding the latter and certain buildings.  The Fair & Exposition Association held insurance on this property in a number of companies.  After adjustment and payment of the loss, the Fair & Exposition Association and the insurance companies joined in an action against the Missouri Pacific Railway Company to recover from that company on account of said loss, alleging that the fire had been negligently set out by the railroad company.  The negligence specifically alleged was the defective construction of an engine and the permitting of dry grass and weeds and old ties to accumulate on the right of way.  Certain other persons, who owned property situated upon the fair grounds which was destroyed by the same fire, brought separate actions to recover for the same loss.  Some of these

were brought against both the Missouri Pacific and the
Omaha Belt Railway Company.   In some of these actions
insurance companies joined as plaintiffs on the same grounds
as in the principal case.   In some of the cases answers and
replies were filed and issues duly made.   In one at least
there was a stipulation to consider the case at issue on the
same issues as made by the pleadings in other cases.   The
cases were tried together, and there was a separate verdict
in favor of the defendants in each case.   A stipulation was
filed that only one motion for a new trial need be filed;
that such motion entitled in each case should be considered
a motion for a new trial in each case; that the cases should
be heard together upon the motion for a new trial, and in
case it should be overruled, said cases should, for the pur-
pose of prosecuting a petition in error, be consolidated and
taken to and heard in the supreme court upon one petition
in error and one record, and that only one bill of excep-
tions should be settled, the same to apply to each of the
cases.   Separate judgments were, however, entered by the
district court.   The plaintiffs in all the cases have now
joined in one petition in error seeking a reversal of these
judgments.

1. The first question we are called upon to consider re-
lates to assignments of error in regard to the overruling of
the motion for a new trial in so far as it was based upon
charges of misconduct of a juryman and of the defend-
ants.   The evidence upon these charges is substantially as
follows: There are affidavits of two attorneys for the
plaintiffs that a witness in said action was one Smith, an
expert engineer and master mechanic, at the time of the
trial an employe of a railroad company in Texas and at
the time of the fire in controversy roundhouse foreman and
inspector of engines for the defendant; that one Gibb was
a juryman engaged in the trial of the case; that after the
adjournment of court one evening, after the arguments to
the jury had been commenced and before they were con-

cluded, the attorneys making the affidavits entered the bar-room of a hotel in Omaha and while there Smith and Gibb entered the room. They approached the bar and stood at some distance from the attorneys. The attorneys heard Smith ask Gibb what he would take, heard Gibb answer, and saw Smith order drinks; then Smith turned to the attorneys and invited them to drink, but they declined. They then saw Smith hand money to the bartender, apparently in payment. Gibb testifies that when Smith lived in Omaha he and Gibb were intimate friends; that during the trial he held no communication with Smith until informed by another juryman that the trial judge had informed him that a juryman might speak to a witness during the trial, provided there was no communication in reference to the case; that accordingly Gibb entered into a conversation with Smith on such topics as their former intimacy suggested, and, as Smith was about to depart, asked him to take a drink; that Gibb took soda water; that there was no conversation between them in anywise relating to the case. The question as to whether or not a verdict would be set aside merely upon proof that a juryman partook of intoxicating liquors during the trial is not presented by this record. The attorneys both testify that they heard Gibb's answer to Smith's inquiry as to what Gibb would take, but they do not state what that answer was. They say that they heard the drinks ordered, but they do not say what was ordered. Gibb's testimony that he drank soda water stands, therefore, undisputed. This feature may, therefore, be dismissed from consideration and our attention directed to the proof by which it is attempted to established an undue influence upon the juryman. In the first place the trial court found in favor of the defendants on this point, and the finding of that court should not be disturbed, if supported by sufficient evidence. The evidence would have to be very clear and convincing to support a reversal against the finding of the trial judge on

such a point. (*Foxworthy v. City of Hastings*, 31 Neb., 835; *Everton v. Esgate*, 24 Neb., 235; *Cortelyou v. McCarthy*, 37 Neb., 742.) In the next place the evidence was conflicting as to whether the witness purchased the drinks for the juror or the juror for the witness. The cases cited, of *Ensign v. Harney*, 15 Neb., 330, and *Vose v. Muller*, 23 Neb., 171, were cases where favors had been bestowed on jurors by the prevailing party or his attorney, and the case of *Johnson v. Greim*, 17 Neb., 447, was one where the jury, during a view of the premises, had taken a meal at the house of the prevailing party, and the verdict was sustained upon the ground that they were in charge of a bailiff instructed to provide them with food; that there was no other available place, and that the jury was, therefore, placed under no obligations to the prevailing party. Mere communications between a party and a juror, not referring to the case and unaccompanied by circumstances creating obligations, or such as would probably create a sense of obligation, have never been held in this state sufficient alone to vitiate a verdict. There was affirmative testimony that no communication took place in regard to the case; that the communication flowed simply from the meeting of old friends, and there was evidence from which the trial court might have found that if obligations were created they were upon the witness and not upon the juror. But the evidence was not such as to require the trial court to treat the act of Smith as that of the defendant. It might be in some cases that the relations of a witness to one of the parties would be such that a communication between such witness and a juror should be looked upon with as much suspicion as a communication with a party; but it was shown that Smith had left the employ of the defendant, was then living in a distant state, and the trial court was justified, under the evidence, in regarding him as it would any other witness. Certainly, a verdict should not be set aside upon such evidence of transactions between a

juror and a casual witness where an absence of all communications with reference to the case is affirmatively shown. It can hardly be too often repeated that parties, counsel, witnesses, and all other persons should be extremely careful to avoid evil and the appearance of evil in their relations to jurors. It is sometimes necessary, to avoid the possibility of error, that verdicts be set aside simply because there may have been an undue influence exerted, and for that reason even innocent communications are fraught with some danger. In this case, however, the showing made by the plaintiffs was so explained that the trial judge did right in not setting aside the verdict upon this ground.

2. All the other assignments relate to the instructions given and refused. · In the petition in error error is assigned on these subjects in the same manner as in *Hiatt v. Kinkaid*, 40 Neb., 178. This form of assignment, therefore, precludes us from examining any group further than to ascertain that the action of the district court was correct as to one instruction of that group. Among the instructions given by the court of its own motion and so grouped was the following: "If you shall find from all the testimony that what was done or omitted to be done by the defendants was such as would not have been done or omitted to be done by a person of ordinary prudence, under like circumstances, then negligence would be imputed to the defendants for such act or omission." The criticism of this instruction is that it makes ordinary care the test and fails to state to the jury the degree of care required to prevent fires along railroads owing to the extra hazard in such cases; but, at the request of plaintiffs the jury was instructed that it was the duty of a railroad company to take such precaution against danger of any kind, including the danger of setting out fire, as the magnitude of the peril demands, and that the ordinary care to be used in the management of a railroad requires precautions, which, if used in any business involving less risk, would be deemed equivalent to the utmost care. The

substance of this rule was given in three other instructions requested by the plaintiffs, so that, taking the whole charge together, the jury was instructed precisely according to plaintiffs' theory on this subject.    The use of the term "under like circumstances" in the instruction complained of called attention to the particular nature of this case and coupled the plaintiffs' instructions with the general instruction given in such a manner as to make the former complementary to the latter and remove any possibility of a conflict in the instructions or confusing the jury.    It is not error to state correctly in one instruction a general rule of law when in other parts of the charge proper specializations and limitations are made with regard to the particular case under consideration, even where the general rule, standing alone, might be too broad for the case and might operate to mislead the jury.

3. Among the instructions refused particular complaint is made of the refusal of the ninth, twelfth, and fourteenth. It was not error to refuse these instructions, for the reason that they all presented inferences of fact and not of law. We quote the fourteenth.    "You are instructed that a fire seen to break out in grass near and to the leeward of a railroad track soon after the passing of an engine affords a presumption that the engine set out the fire, which, if you find that the defendant was operating the road, should be rebutted by evidence that the fire was set out in another way."    This instruction suggested no rule of law.    The burden of proof was upon the plaintiffs to show that the defendant set out the fire, and it was for the jury to say, under all the evidence, whether or not there was a preponderance of the evidence to that effect, and not for the court to say that an inference of fact must be drawn.    The instruction was argumentative upon the facts, and under our Code of Procedure vicious for that reason.    Instructions 9 and 12, while couched in somewhat different language, were of the same nature.

4. Among the instructions given at defendants' request and complained of in a group as erroneous was the following: "The jury are instructed that every action must be brought and prosecuted in the name of the real party in interest, and unless they find from the evidence that the plaintiffs in this action are the real parties in interest, they will return a general verdict for the defendant." It seems that a question was raised as to the proper persons to maintain the action, the insurance companies having paid the loss and then joined in the action with the owners of the property destroyed. This instruction was evidently directed to this point, and it is urged that the question had been decided on demurrer and was not a proper issue for the jury. Whether or not such an issue was properly presented we need not decide, for at plaintiffs' request the jury was given an instruction beginning as follows: "You are instructed that it is the law in this state that every action must be prosecuted in the name of the real party in interest and those united in interest must be joined as plaintiffs or defendants, and this rule is applicable, not only to actions formerly denominated 'equitable,' but to those formerly denominated 'legal,' including those for a recovery of money only, and the defendant cannot object that the court must be required to apportion the amount recovered to the several plaintiffs." The instruction then proceeded to state to the jury the state of facts which, if found, would entitle all the plaintiffs to recover. This instruction was similar to the one complained of, except that to the general language was added a specific statement presenting the case from the plaintiffs' point of view. Having themselves asked the court to submit this issue to the jury, they cannot complain because by a substantially similar instruction requested by the other side the issue was so submitted.

5. Error is assigned as to the modifying by the court of a group of instructions requested by the plaintiff. Each of these instructions as requested related to what would be

proof of negligence on the part of the defendants and to
the right of plaintiffs to recover if such negligence were
shown.  The modification in each instance consisted in re-
quiring as an element to the plaintiffs' right to recover that
there should be "an absence of proof of contributory neg-
ligence."  It is argued that there was no evidence sufficient
to submit to the jury on the issue of contributory negli-
gence.  If this position be well taken, then it was error to
modify any of the instructions in this group.  There was
evidence tending to show that servants of the fair associa-
tion had cut down weeds outside of the fair grounds and
between those grounds and the defendants' tracks, and had
left these weeds to dry out and lie where they had fallen.
There was also evidence tending to show that the fire
started among these weeds.  On this evidence the plaint-
iffs contend that there is no duty imposed upon an adjoin-
ing owner to protect his own property from fires negli-
gently set out by a railroad.  A number of cases are cited
where the owner of property had failed to take some pre-
caution against fire or where he had allowed combustible
material to accumulate on his own land, and the court had
held that such fact did not prevent a recovery.  On the
other hand, the defendants contend that while negligence
cannot be predicated upon the ordinary use of one's own
property, still one may not recover in case his loss was
caused by his failure to exercise such precautions as a per-
son of ordinary prudence would exercise for the protection
of his own property, and that the evidence in this case was
sufficient to submit to the jury upon that issue.  Both of
these views find substantial support in the authorities.  In-
deed, in the multiplicity of cases it would be difficult to as-
sert any theory at all within range of reason for which
support cannot be found.  Some cases, of which *Richmond
& D. R. Co. v. Medley,* 75 Va., 499, is an illustration, go
to the full length of the doctrine contended for by plaint-
iffs, and hold that the construction of a railroad imposes no

additional duty on the owner of adjacent land and requires him to take no precautions whatever to avoid injury by fire. A somewhat modified but similar doctrine is inferable from the case of *Pittsburgh, C. & St. L. R. Co. v. Jones,* 86 Ind., 496. Nearly all the modern cases asserting this doctrine cite the case of *Kellogg v. Chicago & N. W. R. Co.,* 26 Wis., 223; but in *Murphy v. Chicago & N. W. R. Co.,* 45 Wis., 222, this case was explained as holding only that under the facts thereof the court was right in refusing to charge that the plaintiff was guilty of contributory negligence as a matter of law, and in the latter case and in *Clune v. Milwaukee & N. R. Co.,* 75 Wis., 532, it was held that similar facts should go to the jury. The expressions in the opinion in *Kellogg v. Chicago & N. W. R. Co.,* so far as they extended beyond the rule that negligence *per se* had not been shown, were distinctly disapproved.

In a large class of cases the rule is asserted that a land owner cannot be charged with contributory negligence where he uses his property in the usual course for the purpose for which it is adapted. *Patton v. St. Louis & S. F. R. Co.,* 87 Mo., 117, *Kalbfleisch v. Long Island R. Co.,* 102 N. Y., 520, and *Philadelphia & R. R. Co. v. Hendrickson,* 80 Pa. St., 182, are illustrations of this rule. In a larger number of cases, however, it has been held that facts somewhat similar to those charged against the plaintiffs would constitute evidence of contributory negligence which should be submitted to the jury. (*Kansas P. R. Co. v. Brady,* 17 Kan., 380; *Kansas City, F. S. & G. R. Co. v. Owen,* 25 Kan., 419; *Missouri P. R. Co. v. Cornell,* 30 Kan., 35; *Garrett v. Chicago & N. W. R. Co.,* 36 Ia., 121; *Slossen v. Burlington, C. R. & N. R. Co.,* 60 Ia., 215; *Bryant v. Central V. R. Co.,* 56 Vt., 710; *Karsen v. Milwaukee & St. P. R. Co.,* 29 Minn., 12; *Illinois C. R. Co. v. Nunn,* 51 Ill., 78; *Chicago & N. W. R. Co. v. Simonson,* 54 Ill., 504.)

In *Burlington & M. R. Co. v. Westover,* 4 Neb., 268, it was held that the failure of the plaintiff to plow fire-breaks

about his premises did not constitute contributory negligence, the court saying, "All take the risk of injuries unavoidably produced by the use of fire for the purpose of generating steam; but upon what authority is any one to be deprived of the free and ordinary use of his property, in order to prevent its destruction by the negligent use his neighbor may make of his? We know of no such authority." In the same case it was held that the fact that the railroad company permitted dry grass and rubbish to remain on its land was one from which the jury might infer negligence. As applied to the facts of that case, the correctness of the decision cannot be doubted. The construction of a railroad near one's premises does not require one to forbear the ordinary use of his land, nor does it require him to take unusual precautions to guard against the consequences of probable negligence on the part of the railroad; but a railroad company is liable for losses caused by fires set out only when the fires are set out by its negligence. In spite of the utmost precautions fires may arise, and while the owner of adjacent land need not fortify himself against negligence merely to be anticipated and not yet committed, still, especially as fires are not necessarily the result of negligence, he should be required to take such precautions as a person of reasonable prudence would under similar circumstances to prevent the destruction of his property. This rule does not deprive him of the beneficial enjoyment of his property any more than in any other case of negligence. It would probably be under very exceptional circumstances that he would be required to do any affirmative act for his protection; but to hold that with knowledge of the danger he may place combustible materials in such a manner as to invite the spread of any fire which may be set out and, notwithstanding such act, recover, would be to establish a rule wholly foreign to the spirit of our law and as unjust as it would be unique. Here the evidence tended to show that the fair association actually

went off of its own property and performed acts which resulted in the accumulation of combustible matter near the tracks of the defendant and between those tracks and the fair grounds. This was certainly sufficient evidence to submit to the jury under the well settled rule in this state, and the court did not err in so doing.

The foregoing discussion should properly be restricted to the principal case in which the Fair & Exposition Association was a plaintiff. The insurance companies joining as plaintiffs in that case had only the rights acquired by what in insurance parlance is termed "subrogation." They only succeeded *pro tanto* to the rights of the fair association, and all that has been said properly applies to their case. It will be recalled from the statement that there were five other cases on behalf of owners of property on the grounds, and companies insuring such other property. The other plaintiffs had nothing to do with the acts complained of as constituting contributory negligence, and there was no evidence at all tending to show contributory negligence on the part of the plaintiffs in these other cases; but by agreement of the parties the cases were all tried together and upon the same evidence. As already stated, the parties stipulated that only one motion for a new trial should be filed, which was done. They also stipulated that for the purpose of prosecuting a petition in error the cases should be consolidated and heard in the supreme court on one petition in error and one record. The doctrine is well settled that where two or more plaintiffs or defendants join in a motion for a new trial, if the verdict is good against one, the motion must be overruled as to all. (*Scott v. Chope*, 33 Neb., 41; *McDonald v. Bowman*, 40 Neb., 266.) It has also been held that where several join in a petition in error, if the judgment attacked was good against one, it must be affirmed as to all. (*Gordon v. Little*, 41 Neb., 250.) The writer, while considering these rules firmly based on authority, has heretofore regarded them as purely technical,

but this record discloses a, reason for their application. These cases,—some with two plaintiffs, some with a dozen; some with one defendant, some with two,—presenting different rights, different defenses, different questions, both of law and of fact, were tried together and thrust upon the court and the jury in a confused mass. In the motion for a new trial the identity of the several cases was still further lost, and in this court it is stipulated that they shall actually be consolidated for the purpose of hearing. By taking this course counsel elected to waive any rights existing by reason of the differences between the cases and to stake the result upon whichever case might present the least favorable aspect. The attention of the trial court not having been called to the differences in the cases, and there being no effort to sever them in this court, we must enforce the rule as above stated.

JUDGMENT AFFIRMED.