[S. F. No. 4838. Department Two.—July 6, 1909.]

## WALTER H. LINFORTH, Respondent, v. SAN FRANCISCO GAS AND ELECTRIC COMPANY, Appellant.

NEGLIGENCE—EXPLOSION OF GAS—VERDICT—CONFLICT OF EVIDENCE AS TO CAUSE OF EXPLOSION.—In an action to recover damages for injury to a building as the result of an explosion of gas caused by the negligence of the defendant, a verdict for the plaintiff, based on the theory that the explosion was occasioned by gas, will not be interfered with, merely because the evidence as to the cause of the explosion is conflicting.

ID.—MEASURE OF DAMAGES—INJURY TO BUILDING—LOSS OF RENTAL.— In such action, the measure of damages is the cost of restoring the building to its former condition, where the injury is of such a character that this may be done at a reasonable cost, together with an allowance for loss of rentals during the reasonable time re-

quired to make such repairs. This is the rule established by section 3333 of the Civil Code.

ID.—EXPERT OPINION AS TO COST OF REPAIRS.—In assessing such damages, the jury are not bound by expert opinions as to the cost of the repairs.

ID.—ORIGINAL COST OF BUILDING.—In such action, evidence of the original cost of the building was admissible, not as a criterion of damage, but as a bit of data, which, taken with other evidence, tended to enable the jury to reach a conclusion upon the condition of the building at the time of the injury.

ID.—INJURY TO OTHER BUILDING.—Evidence in such action was admissible to the effect that the force of the explosion was such as to injure another building in the immediate neighborhood.

ID.—FAULTY GAS COUPLINGS FOUND AFTER EXPLOSION.—It was proper to admit in evidence faulty gas couplings belonging to the defendant found after the explosion in the meter room of the plaintiff's building, and after new couplings had been installed by it.

ID.—INSTRUCTIONS—HOLE IN METER—IMPEACHMENT OF WITNESS.—A witness called by the defendant, who testified on his examination in chief to finding after the explosion a hole in the back of a meter which was covered largely, if not entirely, with soap, and that, on pushing his hand over it, his nail "went into the hole and gas came out pretty strong," may be asked, on cross-examination, for the purpose of laying a foundation for impeachment, if in the presence of certain persons named, at the time of his finding the leak, he did not say to the plaintiff that the trouble was due to a pinhole in the meter, caused by rust or defect in the tin.

ID.—CONTRIBUTORY NEGLIGENCE IMPLIES NEGLIGENCE OF DEFENDANT.— Where contributory negligence is set up as a defense, it is proper to instruct the jury that "defendant's claim of contributory negligence on the part of plaintiff or some of his tenants presupposes the existence of negligence on the part of defendant, for, if there was no negligence on the part of the defendant, there could be no negligence on the part of plaintiff or any of his tenants."

ID.—IMMATERIAL INSTRUCTION AS TO MEASURE OF DAMAGES.—In such action, an instruction to the jury that "if you find that the plaintiff is entitled to recover you will award him such damages within the amount claimed as will, in your opinion, compensate him for all injuries complained of," would be erroneous if standing alone, but is injurious when accompanied by other instructions repeatedly stating the true rule that damages could be recovered only for injuries complained of and proved.

ID.—REFUSAL TO SUBMIT SPECIAL ISSUES.—It was not error to refuse to submit, at the request of the defendant, a special issue to the jury, as to whether a hole in the meter, as it then appeared, was or was not caused by gas, when the plaintiff conceded that it was

not so caused, or to refuse to submit a special issue which was fully covered by other special issues actually propounded.

Id.—Gas Fixtures—Faultless Condition Before Accident—Presumption as to Continuance of Condition.—An instruction to the effect that if the gas-pipes, meters, and their connections, were free from leaks a week or any less time before the explosion, it must be presumed that they were in such condition at the time of the accident, and unless such presumption were overcome by evidence the verdict must be for the defendant, was properly refused as invading the province of the jury by directing them as to the inference of fact which they should draw from other proven facts.

Id.—New Trial—Newly Discovered Evidence—Refusal of New Trial—Discretion.—A refusal to grant a new trial on the ground of newly discovered evidence tending to show that the explosion was not caused by gas but by dynamite exploded in an attempt to kill a tenant of the building, will not be interfered with, when counter affidavits were presented in opposition to the motion. In such a case, the granting of a new trial is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in a case of manifest abuse.

Id.—Affidavits Must be Authenticated by Bill of Exceptions—Appeal.—Affidavits purporting to have been used on a motion for a new trial, will not be considered on appeal, unless authenticated by bill of exceptions.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen & Knight, for Appellant.

Samuel M. Shortridge, and P. F. Dunne, for Respondent.

HENSHAW, J.—Plaintiff sued to recover damages for injuries to his property, a building in the city and county of San Francisco. The defendant supplied illuminating gas to the building. Its negligence, as alleged, was in its failure to maintain in suitable condition its pipes, meters, connections, and couplings. By reason of this failure gas was permitted to and did escape, and collected in large quantities between the walls, floors, and studding in the building and finally exploded with consequent injury to the building. The answer does not raise a direct issue to the effect that the explosion was not occasioned by escaped gas, but denies that the ex-

plosion was occasioned through the alleged or any negligence of the defendant in allowing gas to escape. In separate defenses the answer also charged that the explosion was occasioned by plaintiff's contributory negligence and by the contributory negligence of plaintiff's tenants.

Trial was had before a jury, to which special issues were submitted. The verdict of the jury was in the amount prayed for, $10,800, and from the judgment which followed and from the court's order denying its motion for a new trial defendant appeals. The greater part of the briefs of appellant and respondent is devoted, upon the one hand, to argument that the explosion was not occasioned by gas at all; upon the other hand, to a showing that the evidence adequately establishes that it was so occasioned. (In explanation it should be said that a very unusual circumstance happened in this: After trial had and judgment rendered, one Harry Orchard *alias* Frank Berry, imprisoned in a jail in the state of Idaho, awaiting trial for murder, confessed that he caused the explosion by a dynamite bomb placed at one of the entrances of the building [the building consisting of flats], for the purpose of killing Frederick Bradley, a tenant of one of these flats.) But upon this a review of the evidence at length would not be profitable. It must suffice to say that the evidence of plaintiff was directed to showing that the explosion was occasioned by gas; that the tenants, previous to the explosion, had noticed and complained of the odor of escaping gas, and the defendant company had been notified. Plaintiff's evidence was further directed to showing that the point or points of escape were in the meters of one or another of the tenants and in couplings which were defective. In brief, the evidence which plaintiff presented upon these matters was sufficient to justify the submission of the cause to the jury, and to warrant the jury's finding, as it did, that the explosion was occasioned by gas furnished to the building by defendant, and by it negligently permitted to escape. Indeed, defendant's own testimony nowhere seeks to controvert the proposition that the explosion was occasioned by gas. Thus, Professor Lowe, called as an expert upon these matters and testifying on behalf of the defendant, says: "I was familiar with the accident at the time it happened. I saw that the building was pretty badly injured and knew that a gas explosion had taken place." Professor

O'Neil, likewise an expert for the defendant, expresses his belief that the explosion was occasioned by gas, and that it required but a small quantity to produce the result. The fire marshal, Towe, also a witness for the defendant, testifies: "It was a very simple question to determine the cause of that (the explosion). It was the confining of the gas that caused the explosion. If you fill this room with gas you are not going to explode it, unless you fill it full, but if you confine it in the wall you are going to have an explosion." Defendant's evidence was addressed to the proposition that it had been in no way remiss in its duty of inspection and care of its pipes, meters, and couplings, and that, not being negligent, either the accident belonged in the category of casualties happening in the exercise of due care, and for which, therefore, the law imputes no blame and charges no liability, or else that it was an accident due to the negligence of one or another of plaintiff's tenants in allowing their gas-fixtures or gas-grates to become so out of repair that leaks resulted and the explosion followed.

The jury awarded plaintiff ten thousand dollars damages for injuries to the building and eight hundred dollars damages, loss of rents. The measure of damages in cases such as this is well settled and is thus expressed by Joyce on Damages: "Where a building has been injured by a trespasser it has been determined that the measure of damages in an action against him therefor will be the cost of repairing or restoring the building to its former condition where the injury is of such a character that this may be done at a reasonable cost, an allowance also being made for loss of rental during the reasonable time required to make such repairs." This rule has met with general acceptance. (Sutherland on Damages, sec. 1018; *Colton* v. *Onderdonk,* 69 Cal. 155, [58 Am. Rep. 556, 10 Pac. 395]; *Fitzsimmons* v. *Braun,* 199 Ill. 390, [65 N. E. 249]; *Helbing* v. *Allegheny Cemetery Co.,* 201 Pa. 171, [50 Atl. 970]; *Parish* v. *Baird,* 160 N. Y. 302, [54 N. E. 724]; *Cincinnati etc. Co.* v. *Falconer* (Ky.), 97 S. W. 727; *Whipple* v. *Wanskuck Co.,* 12 R. I. 321; *Bradley* v. *Iowa Cent. Ry. Co.,* 111 Iowa, 562, [82 N. W. 996]; *Knight* v. *Chicago etc. R. R. Co.,* 122 Mo. App. 38, [98 S W. 81]; *Choctaw etc. R. R. Co.* v. *Alexander,* 7 Okla. 591, [54 Pac. 421].) This rule allowing compensation for the cost of restoration to the original condi-

tion when this can be done at a reasonable expense, together with compensation for the loss of the use of the proprty is in precise accord with section 3333 of the Civil Code.

The building had cost thirty thousand dollars. The damage to it was estimated by the jury and assessed at ten thousand dollars, and this, under the evidence, was not excessive. Besides the actual destruction of the building, it was shown that it was severely wrenched, jarred, and in many places thrown out of plumb. Plaintiff had been compelled to expend $1120 in patchwork and temporary repairs. A contractor testified in effect, that it would cost six thousand dollars more to restore it, and that, even then, it would not be in as good condition as before the explosion, and his estimate did not include many details of additional work, the cost of which the jury was competent to appraise and did appraise. In making this award they were not even bound by the expert opinions as to the cost. 3 Sutherland on Damages, section 456, says: "So far as the amount of the verdict depends upon opinion the jurors are to determine it upon their own judgment. They should proceed upon the description of the subject as they find it from the testimony and avail themselves of such aid as is afforded to be given them. They are not obliged, however, to yield their own judgment and should not conform their verdict to such opinions. Their findings may be more or less in amount than that stated by any witness." (See, also, *City of Springfield* v. *Darby*, 139 Ill. 35, [29 N. E. 860]; *Dammen* v. *St. Louis*, 152 Mo. 186, [53 S. W. 932]; *Thompson* v. *De Weese & Co.*, 25 Colo. 243, [53 Pac. 507]; *Smith* v. *Frio County* (Tex. Civ. App.), 66 S. W. 711.) Nor can it be said that the amount allowed for loss of rents was excessive. Loss to the amount of six hundred and eighty dollars, it was shown, plaintiff had already suffered. The building brought in a rental of about four hundred dollars a month. The difference between six hundred and eighty dollars loss actually sustained and eight hundred dollars, the amount allowed, was doubtless considered by the jury to be the reasonable prospective loss which would be occasioned when the permanent repairs on the building were undertaken,—loss resulting from the necessary suspension of tenancy during the progress of the work.

Evidence of the original cost of the building was admitted. Under the circumstances it was proper so to do. This evi-

dence of original cost, standing alone, would, of course, have slight or no weight in determining the award of damages. It would be of value only in determining whether restoration could be made at a reasonable allowance by way of damages. As the award of damages would be based upon the amount necessary to restore the building to its condition before injury, evidence of the original cost would not at all tend to show what that condition was. But, taken with other evidence in the case, such as was here introduced, it did tend to show the condition of the building at the time of the injury. There was the evidence of a painter who repainted and overhauled the building less than two months before the explosion and who testified to its condition then, to the effect that he found it "then practically as good as when it was new." The evidence was not admissible as a criterion of damage and was not admitted for that purpose. But it was admitted, and was admissible, as a bit of data, which, taken with other evidence, tended to enable the jury to formulate their conclusion upon the condition of the building at the time of the injury.

The court permitted plaintiff to testify, over defendant's objection, to the effect of the explosion upon another building in the immediate neighborhood. Evidence to the effect that the force of the explosion was such as to injure adjoining houses other than that of the plaintiff is held competent in *Monroe* v. *Pacific Dredging Co.*, 84 Cal. 515, [18 Am. St. Rep. 248, 24 Pac. 303.] In *Fitzsimmons & Connell Co.* v. *Braun*, 199 Ill. 390, [65 N. E. 249], which was an action for injuries to a building by an explosion of dynamite, a witness, in testifying to the damage done to plaintiff's building, was allowed to state, without objection, the damage done to his own building. When defendant produced a witness to testify that the latter's building was not damaged by the explosion, the supreme court of Illinois declared that the fact that other buildings at various distances from that of the appellee's were not injured, would not be competent, and would tend to introduce collateral issues likely to mislead and confuse the jury. The case is clearly not in point. The damage that was actually done by an explosion is one thing; the damage that was not done is quite another. Proof of it, as the supreme court well said, would tend to establish nothing, since the

extraordinary freaks of high explosives are well recognized, and would serve to confuse the jury.

Three couplings, one of which was defective, were found in the meter room under the meters on the Sunday following the explosion. These couplings were produced at the trial. They belonged to the defendant and fitted its meters. After the explosion, and before these couplings were found, three new couplings similar to the three in question had been put in the meter room connecting some of the meters. On the morning of the explosion, and within a short time thereafter, the plaintiff had observed an employee of the gas company in the meter room near the meters with some couplings in his hand. Whether they were the actual couplings produced he could not state, though in appearance they were the same. An employee of the defendant was doing some work about the meters, and when asked by the plaintiff what he was doing, made no response. The superintendent of the defendant, who was present at the time, told the employee to let things alone. Defendant produced evidence to the effect that the couplings in question were old and defective couplings which had been left by its employees in the meter room long prior to the accident. The couplings produced, under the circumstances, were properly admitted, but that the defense successfully explained away any inference which could be drawn from them, and the faulty condition of one of them, is shown by the special finding of the jury, which eliminates these couplings or any of them as the cause of the leakage.

Witness Kelly, called by defendant, on his examination in chief testified to finding a hole in the back of one of the meters after the explosion. His testimony, in effect, was that the hole when found was covered largely, if not entirely, with soap, and on pushing his hand over it his nail "went into the hole and gas came out pretty strong." On cross-examination he was asked if, in the presence of certain persons named, at the time of his finding the leak, he did not say to the plaintiff that the trouble was due to a pinhole in the meter, caused by rust or defect in the tin. This question, as laying the foundation for impeachment, was proper. If the cause of the leak was due to a pinhole, his statement that his nail went into the hole and the gas came out pretty strong, was not true.

CLVI Cal.—5

(Code Civ. Proc., sec. 2052; 10 Am. & Eng. Ency. of Law, p. 281.)

With other instructions, the court charged the jury that "Defendant's claim of contributory negligence on the part of plaintiff or some of his tenants presupposes the existence of negligence on the part of defendant, for, if there was no negligence on the part of the defendant, there could be no contributory negligence on the part of plaintiff or any of the said tenants. Contributory negligence is that degree of negligence," etc. Against this instruction it is urged that it would "naturally lead a not over-intelligent jury to infer that the defense of contributory negligence was tantamount to a confession of negligence by the party asserting the defense." That the instruction is sound in point of law may not be questioned. (7 Am. & Eng. Ency. of Law, 2d ed., p. 373; *Kentucky R. R. Co.* v. *Thomas*, 79 Ky. 160, [42 Am. Rep. 208]; *Kansas City R. R. Co.* v. *Crocker*, 95 Ala. 412, [11 South. 262]; *Ruter* v. *Foy*, 46 Iowa, 132.) Moreover, the instructions, taken as a whole, were fair and quite understandable upon the question. If, as appellant seems to contend, the jury, through ignorance, did not understand them, the fault lies not with the law.

As a part of one of these instructions the court declared to the jury: "If, however, you find that the plaintiff is entitled to recover, you will award him such damages within the amount claimed as will, in your opinion, compensate him for all the injuries complained of." Standing by itself and construed as appellant would construe it, the instruction is manifestly erroneous. The plaintiff would be entitled to recover damages only for the injuries complained of and *proved*. But throughout the instructions the true rule is clearly and repeatedly stated. Reading the particular instruction as a part of the whole, it cannot be believed that the jury could have been misled to appellant's detriment.

There was no error in refusing to submit the special issues proposed by defendant. The first, "Was the hole that now appears in the meter of 1402 Washington Street caused by gas or was it otherwise made?" was not in issue. It was conceded by plaintiff that the hole as it then appeared was not caused by gas. The second, "Did gas escape from any of defendant's meters, pipes or their connections on and just

prior to the 17th day of November, 1904? If so specify the source of the leak?" was fully covered by other special issues actually propounded.

Defendant proposed an instruction as follows: "If you shall find that defendant's pipes, meters and their connections were free from any leak a week or any less time before the explosion, then the presumption is that they were in such condition at the time of such accident; and unless this presumption is removed by evidence sufficient to convince you to the contrary, you must find that the presumption is true and your verdict must be given to the defendant." This instruction was properly refused. It invaded the province of the jury by directing them as to the inference of fact which they should draw from other proven facts. (*Stone* v. *Gyser Q. M. Co.*, 52 Cal. 315; *Frazier* v. *Lynch*, 97 Cal. 370, [32 Pac. 319]; *Omaha etc. Assoc.* v. *Missouri Pacific R. R. Co.*, 42 Neb. 105, [60 N. W. 330]; 1 Greenleaf on Evidence, 16th ed., sec. 48.)

Upon motion for a new trial affidavits were presented touching newly discovered evidence. This evidence was a confession of Harry Orchard that he had occasioned the explosion by dynamite in his attempt to kill Bradley. Orchard's affidavit was not presented, but there are found the affidavits of others to whom his confession was made and reason is shown why the affidavit of Orchard could not be procured. Counter affidavits were presented in opposition to this. The court denied the motion, and it may not be said that it abused its discretion in so doing. The granting of a new trial on the ground of newly discovered evidence is largely discretionary with the trial court and the exercise of its discretion will not be disturbed except in a case of manifest abuse. (*Harrison* v. *Barrett*, 99 Cal. 610, [34 Pac. 342]; *Hausmann* v. *Sutter St. R. R. Co.*, 139 Cal. 174, [72 Pac. 905]; *People* v. *Sing Yow*, 145 Cal. 4, [78 Pac. 235]; *People* v. *Jailles*, 146 Cal. 301, [79 Pac. 965].) Moreover, in strictness, these affidavits may not here be considered at all. They are not authenticated by bill of exceptions and are, therefore, not properly before the court. (*Herrlick* v. *McDonald*, 80 Cal. 472, [22 Pac. 299]; *Somers* v. *Somers*, 81 Cal. 608, [22 Pac. 967]; *White* v. *White*, 88 Cal. 430, [26 Pac. 236]; *Ramsbottom* v. *Fitzgerald*, 128 Cal. 76, [60 Pac. 522]; *People* v. *Terrill*, 131

Cal. 112, [63 Pac. 141]; *Esert* v. *Clock,* 137 Cal. 533, [70 Pac. 479]; *Estate of Dean,* 149 Cal. 487, [87 Pac. 13].)

For the foregoing reasons the judgment and order appealed from are affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.