[Civ. No. 1164.  Second Appellate District.—January 28, 1913.]

J. J. MULHOLLAND, Respondent, v. WESTERN GAS CONSTRUCTION COMPANY (a Corporation), Appellant; LOS ANGELES GAS AND ELECTRIC COMPANY, Codefendant.

ACTION FOR PERSONAL INJURIES—EXPLOSION OF SCRUBBER IN GAS FACTORY — NEGLIGENCE — ABSENCE OF CONTRIBUTORY NEGLIGENCE.— Where the plaintiff was employed as an expert pipefitter to do two jobs, one of which was, to fasten the bushing of a scrubber more securely, and it was found that the only means of making it safe was by a lock-nut, which must be secured elsewhere, and the defendant's agent promised that he would secure the same, and directed that the scrubber should be kept open, under an assurance that there was no danger, as the works were shut down; but while plaintiff was otherwise engaged a gas generator came into operation, the

sparks from which fell into the open scrubber, causing an explosion, which hurled a heavy gas plate onto plaintiff's head, crushing his skull, the defendant was negligent in not ordering the scrubber closed, and in not warning plaintiff of any increased risk of danger; but it is held that plaintiff is not chargeable with contributory negligence.

ID.—INCONSISTENCIES IN EVIDENCE—PROVINCE OF JURY—SUPPORT OF VERDICT.—Any inconsistencies in the plaintiff's testimony, or contradictions of his statements by other witnesses cannot be considered upon appeal in argument against the verdict of the jury. It is the province of the jury to determine the facts, and its verdict cannot be disturbed if there is any evidence to support it; and it is held that there is sufficient evidence in the record to sustain the verdict of the jury.

ID.—EVIDENCE—TESTIMONY OF EXPERT—REASONS GIVEN—SAFE MANNER OF EQUIPPING GAS SCRUBBER.—It was not error to overrule an objection to the opinion of an expert witness as to the safe manner of equipping a gas scrubber, where he fully states the reasons for his opinion as an experienced witness on that subject.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank F. Oster, Judge presiding.

The facts are stated in the opinion of the court.

Oscar A. Trippet, and Haas & Dunnigan, for Appellant.

E. B. Drake, for Respondent.

JAMES, J.—This action was brought by the plaintiff to recover damages for personal injuries alleged to have been suffered through the negligence of appellant. As to the second defendant named, judgment of nonsuit was granted and as to which no complaint is made upon this appeal. The jury sitting at the trial of the action returned a verdict in favor of plaintiff for the principal sum of $10,875, upon which verdict judgment was entered. This appeal is taken from the judgment and from an order denying the motion of appellant for a new trial.

Prior to the twenty-fifth day of January, 1910, appellant was engaged under contract as an independent contractor in erecting a certain apparatus for the manufacture of gas. At the date above mentioned the apparatus had been practically

completed, but had not yet been accepted by the gas company for which it was being built, and there remained some work of finishing and adjusting to be done upon it. This was the condition of the work when plaintiff applied to one White, who was in full charge of the construction work, for employment. Plaintiff, a young man, twenty years of age, was a competent plumber and pipefitter and had worked for about two weeks in a gas manufactory, but not in the generating department. White, after asking him some questions as to his experience as a pipefitter, employed him and he went to work immediately. Plaintiff testified that White took him around the apparatus, which consisted mainly of several cylinders of metal standing upright, about ten feet in diameter and twenty-five feet long. The cylinders were all capped so as to make complete receptacles for the gas and the material used in generating the same, except one, which had an opening for the introduction of fuel, and another which had an opening at the top for the escape of flame and fumes. The uses served by the various cylinders in the process of the manufacture of gas were fully explained by the evidence, but that narrative need not here be repeated, as the conditions which surrounded the plaintiff and the manner in which he received his injuries can be briefly explained. Of course, any inconsistency in the plaintiff's testimony, or contradiction of his statements by other witnesses, cannot be considered in argument against the verdict of the jury, because it was for the jury to determine the facts and with their determination we can raise no question so long as some evidence in support thereof is shown in the record. Plaintiff testified that after looking about the apparatus he was shown, at the top of one of the tanks called a scrubber, a pipe connection, the pipe being attached to the tank by the use of a bushing, which was a fitting used to screw into a threaded aperture in the tank and to which bushing in turn the pipe fixture was screwed; that White told him that the bushing was loose and leaked, and asked him if he could fix it; that he said yes, that he would see what he could do with it, and was told to get a helper to assist him; that he had asked White if the machine was shut down and White had replied: "Yes, shut down, ain't no danger here." The next day he returned with his helper and they took out the bushing and tried to make it

tight with some cord and white lead, but failed; that he reported to White and told him that he could not fix the bushing without a lock-nut and that there were no such nuts at the storeroom, and White replied: "Leave it out, or leave it alone, and I will get you a lock-nut when I go up town." The bushing was left out and consequently there was left open an aperture in the top of the scrubber tank of about two and one-half inches in diameter. Pending the securing of a lock-nut, plaintiff was instructed by White to bring in a certain gas meter and attach it to a tank, and he was at work at this when he received the injuries complained of. Thirty or forty feet away from the apparatus upon which plaintiff was at work was a gas generator in active operation. As was usual with such machines, at regular intervals there would be a burst of flame from the top of the generator, which would last for a few moments, and oftentimes following this discharge sparks would fall about in the vicinity of the apparatus. The top of the scrubber from which plaintiff had removed the bushing was not protected so as to prevent sparks falling upon it, and it does not appear that it was usual to provide such protection. Near to and below the top of the scrubber referred to was laid a floor made of sheets of iron which were not fastened, but fitted upon iron beams which supported them. While plaintiff was at work with the meter on the ground near the scrubber, an explosion occurred from within the scrubber, which the evidence tended to show was caused by a spark or sparks from the neighboring generator falling into the aperture of the scrubber from which the bushing had been removed. This explosion caused several of the iron plates of the floor referred to to be dislodged, and one of these plates in falling struck plaintiff on the head, crushing a portion of his skull and inflicting serious and permanent injuries.

It is argued on behalf of appellant that under the facts shown plaintiff was not entitled to recover because: 1. That the risk of the injury which was caused to him was one assumed by him as a risk ordinary to his employment; and 2. That the injuries were caused through his own contributory negligence.

It was not shown by any testimony that plaintiff was familiar with the method of manufacturing gas, or that

he knew just how the apparatus upon which he was employed to work was operated. He did know that, as was a fact, the scrubber contained water, or that water was made to percolate through it, but he had no knowledge that the receptacle contained gas or was in a condition which made it dangerous to leave open the hole from which he detached the bushing. He testified that there was an odor of gas all about the place, but that odor, of course, was common about the premises of a gas-manufacturing establishment. Moreover, he did take the precaution, according to his sworn statement, to inquire of White whether the machine was in operation or not, and was told by White that it was shut down and that there was no danger there. White was the representative of his employer and a man experienced in the handling of gas-making apparatus. Plaintiff was entitled to rely upon the assurances of his employer as to the absence of danger, unless by observation something was brought to his attention which would give him knowledge of a contrary state of things. But not only was there evidence to show the statement of White as narrated above, but there was evidence of the further direction of White given to plaintiff, when the latter informed White that he could not fix the bushing without a lock-nut, to ''leave it out, or leave it alone.'' White told the plaintiff that the machine was shut down and that there was no danger; then when informed of what the plaintiff had done with respect to the bushing, told him to leave it out; in other words, to leave the aperture open, for it could not be closed without the use of a bushing. Plaintiff followed these instructions, left the bushing out while waiting for White to obtain the lock-nut, and went about the other work that was assigned to him to do by his employer. Considering all of these facts, it cannot be said either that there was any assumption of the risk by plaintiff, or any negligence on his part concurring to produce his injuries. On the other hand, plaintiff's employer was presumed to know that it would be dangerous to leave the aperture open in the scrubber and it was negligent either in not causing the opening to be closed, or informing plaintiff of the risk attendant upon his working about the machine in that condition. There was no evidence showing that after the opening had been made by the removal of the bushing any flow of gas could be detected

at the aperture, and there was testimony showing that when such an opening had been made the tendency would be for air to be drawn in rather than for gas to be forced out; this due to the fact that the pressure inside the scrubber was customarily below that of the atmosphere. Some argument is made to give point to the contention that plaintiff's testimony should be disregarded as being too improbable to warrant credence. As we have before suggested, it was the province of the jury to pass upon the credibility of the witnesses and with their conclusion as to those things we have no right to interfere. It may be said, however, that the testimony of plaintiff as to the material facts was not inherently improbable and this testimony did find some corroboration at least in the evidence furnished by other witnesses. A careful examination of the record convinces us that there was evidence sufficient to sustain the verdict of the jury.

Two witnesses gave testimony on behalf of the plaintiff touching the use of steam in gas scrubbers. It was sought to show that in order to expel the gas from such a receptacle and make it safe from danger of explosion such as that which occurred at the time plaintiff was injured, the use of steam was reasonably necessary and customarily employed for that purpose. One witness, Gillingham, testified that he was foreman of the Western Boiler Works and had worked for a considerable length of time on the gas machine which exploded; that he was familiar with the machinery used in this part of the state for making gas, and proceeded to describe the process. Without objection, he was allowed to testify that there was no steam-pipe attached to the scrubber, and he further said, in explanation of the purpose for which such a steam-pipe might be used: "That is all to kill the gas by turning the steam on. The steam dissolves it. If there was a steam-pipe on it you turn it on to kill the gas." As noted, no objection appears to have been made to these answers, but error is assigned because of the ruling of the court permitting the witness Millard to make answer to a similar line of interrogatories. Millard testified that he was 38 years old, had had seven years' experience in the manufacture of gas, and had made a study of the process by the perusal of text-books, treatises, etc., and by actual experience. At the

21 Cal. App.—4

time the accident happened which resulted in the injuries being inflicted to plaintiff, this witness was superintendent of the Los Angeles Gas and Electric Company, and was in his office close by the scene of the explosion. He testified, without objection, as to the use to which the various machines were put in the manufacture of gas. He further testified that he had had experience with gas plants at Santa Monica, Long Beach, and other localities, and had been superintendent of the Los Angeles company for about seven years. He was then asked the question as to whether, considering the safety of the employees, it was proper to equip a scrubber with or without steam-pipes. This question was objected to, the objection overruled and the witness answered as follows: "I can't say what the Western Gas sets—how they are equipped. I can speak of the machines that I have built, that have been built under my jurisdiction." The court then asked him this question: "The question is, what is necessary to make a plant reasonably safe for the protection of the plant?" and he answered, "In its scrubber I would put a steam-pipe for the purpose of purging the cylinder." All of this testimony was objected to and appropriate motions to strike out were made, and the ruling of the court was adverse to appellant. The witness in further explanation testified that when a machine was out of commission for any purpose steam would be injected to drive out any foreign matter, such as gas, and also for the purpose of removing tar and other residuum that might have collected therein. He then was asked this question: "Do you mean to say that you consider it, the steam-pipe, what you call the purging process, necessary for the safety of the men in and about the plant? A. Yes. That is my opinion that was asked for." It is objected that this witness had not shown sufficient knowledge to entitle him to testify as an expert; also that, conceding his qualifications to so testify, he should not have been permitted to say what would be a safe way to equip a scrubber in order to protect the men employed upon it. The cases of *Giraudi* v. *Electric Improvement Co.*, 107 Cal. 120, [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108], and *Luman* v. *Golden Ancient Channel M. Co.*, 140 Cal. 700, [74 Pac. 307], are cited in support of the argument on this point. As to the general qualification of the witness we think there was sufficient shown to entitle him to testify

upon the subject adverted to, and if his answer as to what would be a safe way to equip a scrubber stood alone without explanation, we would be inclined to hold that the overruling of objection thereto was prejudicial error.   However, the witness quite fully gave the reasons for his conclusion, and even though he was not shown to be a skilled chemist, he had had a great deal of practical experience in the manufacture of gas and as to the use and operation of appliances connected therewith.   In the case of *Giraudi* v. *Electric Improvement Co.* the court said: "The cases do undoubtedly hold that an expert cannot be asked whether a structure is a safe one or whether certain methods are prudent, but all hold that facts may be elicited from the witness from which the conclusion inevitably follows. . . . The answer of the witness gave the facts in full, explained what methods would have been safe." It was there held that the error, if any had been committed, was not prejudicial, and we feel constrained to so view the ruling of the court as made in this case.   In *Luman* v. *Golden Ancient Channel M. Co.* the court merely held that it was not error to sustain an objection to a question which required a witness to state as to whether a certain machine and appliance was a safe one.   It is not said in that case that it would have been error under the facts to have overruled the objection.   And so here, if the court had sustained the objection to a question which brought forth from the witness an opinion as to what equipment was necessary to make a scrubber safe, that ruling would not be held to be error.   Under all of the testimony, it was for the jury to say whether ordinary and customary practice in this locality required the use of steam attachment on the gas machine to render it safe when not in use and being worked upon by employees.   The jury were fully instructed as to the law in this regard.

There seems to us to be nothing in the point made that plaintiff was not acting within the scope of his employment in leaving the scrubber aperture open.   He was specifically instructed to attempt to fix the bushing which was fitted into the aperture, and when he told White, the foreman, as we must assume from his testimony he did tell him, that he could not fix it without having a lock-nut White instructed

him to leave the bushing out or leave it alone until a lock-nut could be procured with which to make it tight.

The point is made that as plaintiff was injured by the fall-ing of the floor plate, and as no negligence was shown in the installation of such plates, or the manner in which they were secured, no recovery could be had because of the falling of the plate. To our minds, there is no merit in this contention. The explosion of the scrubber and the falling of the floor plate happened simultaneously, and without any question whatever it must be said that the explosion was the direct and proximate cause of the injury sustained by plaintiff.

We have examined the instructions given by the court and are satisfied that they contain a full and fair statement of the law as applied to the facts of this case.

The judgment and order are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 29, 1913.

Beatty, C. J., dissented from the order denying a rehear-ing in the supreme court, and filed the following opinion on March 31, 1913:

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause. Aside from any of the matters dis-cussed in the opinion of the district court of appeal, there is a question presented by the record which we are bound to notice notwithstanding the omission of that court to do so; and this, for the reason that the amount involved brought the cause within our jurisdiction, by direct appeal, and its assignment to the district court for hearing and decision does not absolve us from the obligation to consider every sub-stantial assignment of error relied upon by the appellant.

The trial judge gave to the jury the following instruction: "Defendant's claim of contributory negligence on the part of the plaintiff as set out in the verified answer of the defend-ant presupposes the existence of negligence on the part of the defendant, for if there was no negligence on the part of

the defendant, Western Gas Construction Company, there could be no contributory negligence on the part of the plaintiff, J. J. Mulholland. The contributory negligence as used in these instructions means such negligence, if any, on the part of the plaintiff contributing directly or approximately to the accident, and except for such negligence said accident would not have occurred.'' It was quite proper for the district court of appeal to omit any discussion of this particular instruction, for the reason that one substantially like it was approved by this court in *Linforth* v. *San Francisco Gas & Elec. Co.*, 156 Cal. 66, [19 Ann. Cas. 1230, 103 Pac. 320], and that decision is a binding precedent in cases of this character for the district courts of appeal and the superior courts. Here, however, it may be, and in my opinion it ought to be, reconsidered. It plainly tells the jury that a plea of contributory negligence of the plaintiff is an admission of culpable negligence on the part of defendant. This is not the law. A defendant may deny that he was guilty of any negligence, and at the same time may consistently claim that even if the jury should find that he has been negligent, the plaintiff would not have sustained any injury if it had not been for his own negligence as a proximate cause. And it cannot be said that an error of this character in a distinct and completed instruction is cured by a more correct statement of the law in the general and discursive charge of the court. The result in such case is, at best, a direct conflict in the instructions—leaving the jury without a guide in their deliberations.