[Civ. No. 3244. First Appellate District, Division One.—May 27, 1920.]

A. ROSS, Appellant, v. SAN FRANCISCO-OAKLAND TERMINAL RAILWAYS COMPANY (a Corporation), et al., Respondents.

[1] EVIDENCE—SUFFICIENCY OF TO PROVE FACT—SUBMISSION OF QUESTION TO JURY—WHEN NOT NECESSARY.—In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture, or surmise, that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists. When the evidence is not sufficient to justify such an inference, the court may properly refuse to submit the question to the jury.

[2] ID.—WHEN DIRECTED VERDICT PROPER—CONFLICT IN EVIDENCE.—A directed verdict is proper whenever, upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence; and to warrant a court in directing a verdict, it is not necessary that there should be an absence of conflict in the evidence, but, to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one.

[3] NEGLIGENCE—COLLISION BETWEEN STREET-CAR AND PEDESTRIAN—RES IPSA LOQUITUR.—The doctrine of res ipsa loquitur has no just or proper application to the case of a collision between a street-car and a pedestrian on the street.

[4] ID.—RECIPROCAL DUTIES OF STREET-CAR COMPANY AND PEDESTRIANS—BREACH—RESPONSIBILITY.—The duties of a street-car company and its motorman upon approaching an intersecting street and of a pedestrian about to cross the tracks at such intersection are reciprocal, and each is required to approach the crossing with due regard for the rights of the other, and if either fails to observe the care required, it is negligence for which the guilty party is responsible.

[5] ID.—CROSSING OF HIGHWAY IN FRONT OF APPROACHING CAR—PROPRIETY OF CONDUCT—QUESTION FOR JURY.—If, in view of his distance from an approaching street-car, the rate of its speed and all other circumstances of the event, a reasonably prudent man would

4. Duty of driver of street-car to anticipate attempt of pedestrian to cross track, note, Ann. Cas. 1915A, 216.

Attempting to cross in front of observed street-car as contributory negligence, note, L. R. A. 1917C, 692.

47 Cal. App.—48

accept the hazard and undertake to cross the highway, a traveler may do so, and the propriety of his conduct is ordinarily a question for the jury.

[6] Id.—Connection Between Negligence and Injury—Proof by Circumstantial Evidence.—While, by merely proving a defendant's negligence, without in some way fastening that negligence to the injury, a case is not made out, it is not necessary that an eyewitness be produced to testify directly to the fact, but the connection may be made by circumstantial evidence in the same way that any other fact can be so proved.

[7] Id.—Exercise of Ordinary Care by Pedestrian—Presumption.— In the absence of evidence to the contrary, it will be presumed that a pedestrian who was killed by a street-car while attempting to cross the tracks at a crossing was exercising due and proper care for the protection of his life.

[8] Id.—Cause of Accident—Doctrine of Probabilities—Application of Rule.—The principle of law that if the probabilities are equally balanced that the accident was produced by a cause for which the defendant is responsible, or by one for which he is not, the plaintiff must fail, is more applicable as a rule to guide the jury in its deliberations upon the facts than it is as a rule to guide the appellate court in passing on the sufficiency of the evidence.

[9] Id.—Practice of Stopping Cars at Crossing — Effect of Departure From.—The settled practice of stopping a street-car at a particular place becomes a rule of conduct upon which the public has a right to rely to a reasonable extent, and a departure from such rule is a vitally important element in determining the question of negligence, for it constitutes a departure from the standard of safety which the defendant has itself adopted.

[10] Id.—Exercise of Proper Care by Motorman—Belief of Pedestrian.—A pedestrian about to cross a street-car track is entitled to act upon the belief that the operator of an approaching street-car will, upon his part, obey the rules of the company, and run the car at the speed which is customary at that particular place, and that he will give the usual warnings and signals, and take the usual precautions to avoid injury to others.

[11] Id.—Failure to Follow Settled Practice—Duty to Assume That Pedestrian might Attempt to Cross Tracks—Question for Jury.—Under the circumstances of this case, in which a boy of the age of sixteen years was killed by a street-car which had failed to stop at a crossing, as had been the settled practice of the company, it should have been left to the jury to say whether or not the manner in which the motorman operated the car at the crossing was such that he should have assumed that persons might ignorantly attempt to cross in front so near the approaching car as to make a collision probable.

[12] ID.—DEATH OF MINOR SON — ACTION FOR DAMAGES — HIDING OF
SHOE BY MOTORMAN—EVIDENCE OF ADMISSIBLE.—In this action for
damages for the death of a minor son through having been struck
and run over by a street-car of the defendant company, the acci-
dent having occurred at an early hour of the morning and there
having been no eye-witnesses, the trial court committed error in
excluding from the jury testimony of the motorman, a codefendant
in the action, showing that after the car reached the car-barn a
shoe, admitted to be the shoe of the deceased, was found back of
the pony truck of the car, that he knew "something had happened,"
and that he put the shoe in a garbage can used by the city, where
it was out of sight.

[13] ID.—CONCEALING OF PERTINENT EVIDENCE — TESTIMONY OF AD-
MISSIBLE—ADMISSIONS.—Testimony showing, or tending to show,
an attempt on the part of a party to a suit to cover up, conceal,
or otherwise prevent pertinent facts from being presented to the
court or jury, is competent and proper. Such efforts may be
shown, not as part of the *res gestae*, but in the nature of an ad-
mission, the effect of which is a matter for the consideration of
the jury.

APPEAL from a judgment of the Superior Court of Ala-
meda County. Joseph S. Koford, Judge. Reversed.

The facts are stated in the opinion of the court.

Elston, Clark & Nichols for Appellant.

W. H. Smith and A. L. Whittle for Respondents.

WASTE, P. J.—This is an action against the defendant
street railway company, and its motorman, S. Serpicò, for
damages resulting from the death of plaintiff's minor son,
Andrew Ross.

It is charged in the complaint that at the time he was
killed, Andrew Ross, a boy of the age of sixteen years, was
walking across Telegraph Avenue, in the city of Berkeley,
when a street-car of the defendant company, operated by
Serpico at a high, excessive, and careless rate of speed, ran
over him, causing his death. It is alleged in a second count
that at the time of the accident the motorman so operated
the street-car as to lead the boy to believe that it was about
to come to a full stop, allowing him to continue safely in his
course of walking across the street in front of the car, and

that so believing he attempted to cross the track of defendant, when he was suddenly struck by the car and killed.

The court shut out testimony considered vital by the plaintiff, and at the conclusion of the trial instructed the jury to find for the defendants. From the judgment entered the plaintiff appeals.

There were no eye-witnesses to the accident, which occurred at the intersection of Telegraph and Ashby Avenues, on both of which streets the defendant operated its street railway system. Shortly before 1 o'clock on the morning of February 15, 1918, Andrew Ross, then alive and well, escorted a young lady friend to the place where she was working in Berkeley, a point about five blocks north of Ashby Avenue and three blocks east of Telegraph Avenue. Leaving his companion at the front steps, he walked west on Derby Street toward Telegraph Avenue. At that time Ross lived at 2150 Woolsey Street, which is three blocks south of Ashby Avenue and two blocks west of Telegraph Avenue. It is thus apparent that in order for him to reach his home from the place where he left his friend, it was necessary for him to cross both Telegraph and Ashby Avenues.

At some time prior to 1:20 o'clock, the motorman on a car of the defendant, running south on Telegraph Avenue, discovered the body of Ross lying on the south side of Ashby Avenue, near the west rail of the Telegraph Avenue track. A sergeant of police, who was summoned, found the boy in a dying condition. He was semi-conscious, but could not talk. One of his legs was crushed off, and pieces of the left foot and left shoe were gone. His clothing was badly torn, and he had the appearance of having been rolled and crumpled underneath something. He died soon after being removed to the emergency hospital.

Between the time Ross left his friend, east of the crossing, and the time he was found, car 397 of the defendant company had passed that point. It was a car, which on leaving Berkeley after its final trip, had turned into Telegraph Avenue to run to the car-barn in Oakland for the night. The car never stopped after entering Telegraph Avenue. It slowed down, but did not stop at Dwight Way, on which an intersecting line of the defendant was operated. The motorman gave it "a big kick" after crossing that street; that is, he applied the power for a time, then shut it off, and al-

lowed the car to coast toward Oakland, the grade on Telegraph Avenue being downhill, without applying the brakes at any point to check its speed, which, so he testified, was fifteen or sixteen miles per hour. As he neared Ashby Avenue Serpico had his car under full control, and about one hundred feet north of that street he applied the brakes, and gradually reduced the speed to four or five miles per hour. When the front of his car was about twenty-five feet from the car rails on Ashby Avenue he "gave it some more juice," and went on toward the car-house, without stopping, as he was required by the rules of the company to do, before crossing Ashby Avenue, on which was operated a cross-line of the same company. After the car had passed over the intersecting rails of the cross-line tracks, and had proceeded some ten or fifteen feet, Serpico and the conductor, who was sitting in the forward compartment of the car with him, felt a jar, or jolt, different from that caused by the trucks running over the cross-rails. The car jumped two or three times, the cause of which, the motorman testified, he "thought was a stone on the track . . . he supposed it was a medium sized rock." The car was not stopped, but proceeded to the car-barn. Serpico testified that he heard no outcry at the time, and saw no one crossing, or near the car track, although the streets at that point were well lighted.

When the car turned in at the barn it was discovered that the middle guard on the westerly side was missing and the rear guard was hanging by a single hook. There was blood on the side of the car, on the flange of the front drive-wheel, and hair and blood on the air-compressor, a few feet back of the wheel. The missing side guard was later picked up near the spot where the body of Ross was discovered. A subsequent investigation of the scene of the accident disclosed the fact that his body had been dragged from a point almost on a line with the northerly crossing of Ashby Avenue clear across that street and close beside the westerly rail of the south-bound track. The marks and blood stains on the ground indicated that he had been rolled or dragged some distance before any part of the car ran over his body, which lay at just about the spot where the crew of the car felt the jar, or jolt, as it passed over something.

From the foregoing facts, which appear without contradiction, no one can doubt for an instant that the boy, Ross,

was killed by being run over by the street-car of the defendant railway company, operated by the employee, and codefendant, Serpico. Respondents in their brief apparently concede the point, but argue that the proximate cause of the injury and death rests in surmise and conjecture, and that the evidence fails to establish that it was proximately caused by the negligence of the defendants. That was the view adopted by the lower court, as indicated by its action in removing the cause from the consideration of the jury. The appellant contends that it was error for the court to direct a verdict in the case, claiming that upon the evidence the presumption was that the boy was killed through the negligence of the defendant; that although that presumption might be rebutted it was a question for the jury whether the facts and circumstances in the case did so. The respondents answer that there was no evidence tending in any way to show that the plaintiff's son was killed by any act of it; and particularly contends that, if it be admitted that the boy was killed by the street-car, there is nothing tending in the slightest to show any negligence on its part. The ruling of the lower court presents the main issue for determination upon this appeal.

[1] In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture, or surmise, that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists. When the evidence is not sufficient to justify such an inference, the court may properly refuse to submit the question to the jury. (*Janin* v. *London etc. Bank,* 92 Cal. 14, 27, [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100].) A directed verdict is proper, unless there is substantial evidence tending to prove in favor of a plaintiff all the controverted facts necessary to establish his case. [2] In other words, a directed verdict is proper whenever, upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence. To warrant a court in directing a verdict, it is not necessary that there should be an absence of conflict in the evidence, but to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one. (*Estate of Baldwin,* 162 Cal. 471, 473, [123 Pac. 267].) [3] The

doctrine of *res ipsa loquitur* has no just or proper application to the case of a collision between a street-car and a pedestrian on the street. . Such mishap is quite as likely to be due to the fault of the person struck, or of some third person, or to some unforeseen and unpreventable cause, as to the negligence of those operating the car. (*Tower* v. *Humboldt Transit Co.*, 176 Cal. 602, 607, [169 Pac. 227].) Consequently it was not sufficient for the plaintiff in the instant case to merely show the happening of the accident. It was necessary that he go further, and fasten the blame for the injury upon the defendants.

[4] At the time of the happening of the accident in question the duty of the defendants and of the decedent were reciprocal. Each was required to approach the crossing with a due regard for the rights of the other, and if either failed to observe the care required, it was negligence for which the guilty party is responsible. (*Bickel* v. *Pennsylvania R. R. Co.*, 217 Pa. St. 456, 462, [118 Am. St. Rep. 926, 66 Atl. 756].) In *Kansas City etc. R. R. Co.* v. *Gallagher*, 68 Kan. 424, [64 L. R. A. 344, 75 Pac. 469], the court held that while it is the duty of a pedestrian upon a city street, who is about to cross the track of an electric street railway company, to exercise his faculties, and take ordinary care to avoid collisions with the cars: If he does look and listen, he will be held to an apprehension of that which he should have seen and heard, and if he fails to look and listen, he will be held to the same liability in case of disaster as if he had done so. [5] But a traveler may cross an electric street railway track in front of an approaching car which he sees and hears and not be negligent. If, in view of his distance from the car, the rate of its speed, and all other circumstances of the event, a reasonably prudent man would accept the hazard and undertake to cross the highway, a traveler may do so, and the propriety of his conduct is ordinarily a question for the jury. (See, also, *Baltimore etc. R. R. Co.* v. *Griffith*, 159 U. S. 603, 611, [40 L. Ed. 274, 16 Sup. Ct. Rep. 105, see, also, Rose's U. S. Notes].)

In support of the action of the lower court in the instant case in directing the jury to return a verdict in favor of the defendants, the respondents rely upon *Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363, [64 Pac. 480], as deciding this case. As was said by the writer of that decision, the facts

of the case were of the most meager character. Upon a dark and foggy morning, about half-past 5 o'clock, the mutilated dead body of a young man, a total stranger in the locality, was found lying upon a side-track in the railroad yards of the defendant, near the dead body of another man, also a stranger in the village. There was no witness to any accident. It was claimed by the plaintiff that the deceased was killed by a backing engine and tender which passed over the particular spot to the roundhouse about an hour earlier on the same morning. The negligence of the defendant was claimed to be established by showing that the tender of the engine had no light upon the rear end. The court held that, conceding these facts, the case was still too weak to support a verdict, for the reason that there was a total lack of evidence showing any causal connection between the absence of a light upon the tender and the death of the deceased. This was held to be true, even though it be assumed to be the law of this state that, in the absence of evidence upon the subject, it will not be presumed that the deceased was himself guilty of negligence. The court said, "It is as necessary for the plaintiffs to show that the defendant's negligence caused the injury, as it is for them to show that the defendant was guilty of negligence, or that the party was injured." (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 365, [64 Pac. 481].) **[6]** By proving a defendant's negligence, without in some way fastening that negligence to the injury, a case is not made out. (*Union etc. Co.* v. *San Francisco Gas etc. Co.*, 168 Cal. 58, 62, [141 Pac. 807].) These rules, however, do not require demonstration of the connection between the proved, or admitted, negligence and the resulting injury. It is not necessary that an eye-witness be produced to testify directly to the fact. The connection may be made by circumstantial evidence in the same way that any other fact can be so proved. (*County of Alameda* v. *Tieslau*, 44 Cal. App. 332, [186 Pac. 398].) The conclusion reached by the court in the Puckhaber decision was, no doubt, correct upon the facts there considered. The circumstances disclosed in other cases, possibly possessing some degree of similarity, may not fit the facts of that case. (*Peters* v. *McKay*, 136 Cal. 73, 76, [68 Pac. 478].)

**[7]** While, as before stated, the presumption arising from the doctrine of *res ipsa loquitur* does not apply to accidents

like the one in which young Ross was killed, another, and an equally binding, presumption does arise, to wit, that the deceased, in such cases, exercised ordinary care. The rule of law referred to in the Puckhaber decision is, perhaps more clearly stated in a later case, in which the court said: "Where death is occasioned under circumstances such as this, without eye-witnesses, the law comes to the aid of the plaintiff who is pressing a suit for damages for the death, and that law is found in the presumption of the Code of Civil Procedure—namely, that a person takes ordinary care of his own concerns. (Code Civ. Proc., sec. 1963, subd. 4.) . . . This is a controvertible presumption, it is true, but until controverted it is evidence in accordance with which the jury is bound to decide. (Code Civ. Proc., sec. 1961.)" (*Crabbe* v. *Mammoth Channel G. M. Co.*, 168 Cal. 500, 506, [143 Pac. 714].) In applying this principle of law to personal injury cases the supreme court of the United States has said: "The presumption is founded on a law of nature. We know of no more universal instinct than that of self-preservation —none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming and death. There are few presumptions, based on human feelings or experience that have surer foundation. . . . " (*Baltimore etc. R. R.* v. *Landrigan*, 191 U. S. 461, 474, [48 L. Ed. 262, 24 Sup. Ct. Rep. 137, see, also, Rose's U. S. Notes].) When recourse must be had to this rule of human conduct, in determining the question of responsibility in cases of accidents like the one now being considered, "it is fair to presume, until the contrary is proven, and this presumption is sustained by a rule of law, that one who was killed while crossing a railroad track was exercising due and proper care for the protection of his person and the preservation of his life. The presumption which arises in favor of the instincts of self-preservation, and the known disposition of men to avoid injury and personal harm to themselves is sufficient to constitute *prima facie* evidence that the person killed was at the time of the accident free from contributory negligence." (*Fleenor* v. *Oregon Short Line R. R. Co.*, 16 Idaho, 781, 802, [102 Pac. 897, 903].)

Existing facts and circumstances very similar to those surrounding the death of the boy Ross, in this case, have been frequently considered by the courts, in the light of the fore-

going rule of self-preservation. In *Robbins* v. *Pennsylvania Co.*, 257 Fed. 671, [168 C. C. A. 621], the decedent left the house of a friend, which was on the east side of the street and south of the two railroad tracks, for the purpose of mailing a letter at the postoffice, which was on the west side of the street and on the north side of the tracks. At the time she started on this errand the south track was occupied by a long, slowly moving east-bound freight train. At about the time the caboose· at the rear of this train passed out of the street, an engine drawing a short west-bound train on the northerly track, and running at a speed of fifty-five to sixty miles an hour, suddenly burst into. view, without ringing of bell or blowing of whistle. The proof tended to show that it was this west-bound train on the northerly track which struck and killed the decedent. No one saw the decedent after she left her friend's house, and the point of collision was left to inference. The trial court directed a verdict in favor of the defendant, one of the grounds being that the plaintiff had not sustained the burden of showing that the defendant's alleged negligence˙ was the direct and proximate cause of decedent's death. The trial judge concluded that the "decedent must either have crossed behind the east-bound train immediately on its clearing the sidewalk, when she was not in position to see the west-bound train, or have gone ahead without looking to see whether a train was coming from the east. This conclusion is not," said the circuit court of appeals, in reversing the lower court, "in our opinion, inevitable, at least on the theory that the collision occurred at the west crossing. Defendant had the burden of proving decedent's negligence. The law presumes that following the instinct of self-preservation she exercised due caution, and that before crossing the tracks she looked and listened for approaching trains." After citing a number of cases, some of which we have already alluded to, the court considered the circumstances and held that as different inferences might be drawn from the circumstances surrounding the accident, the decision of the question rested with the jury.

A case having some of the essential features of the case at bar was considered by the United States supreme court in *Baltimore etc. R. R.* v. *Landrigan*, 191 U. S. 461, [48 L. Ed. 262, 24 Sup. Ct. Rep. 137]. The deceased was em-

ployed on the night force of the railroad company. The
usual and direct route to his home took him over a well-
lighted crossing. A few minutes after he left the round-
house his body was found near the crossing with flesh and
blood scattered along the track. There were no witnesses
to the accident. At that time a switching crew was making
up a train, one of the Pullman cars of which broke loose
by reason of an alleged defective method of coupling, and
was shunted over the crossing. A passenger train passed
the same point just about the same time. On these facts the
trial court refused to direct the jury to render a verdict for
the defendant, but submitted the case to the jury, which
found for the plaintiff. On appeal it was held that it was
not error for the lower court to instruct the jury that in
the absence of all evidence to the contrary there was a pre-
sumption that the deceased stopped, looked, and listened
before attempting to cross the tracks, citing *Texas etc. Ry.
Co.* v. *Gentry,* 163 U. S. 353, 366, [41 L. Ed. 186, 16 Sup.
Ct. Rep. 1104, see, also, Rose's U. S. Notes]. The railroad
company also contended that as there was no evidence from
which it could be determined that it was the uncoupled Pull-
man car, and not the passing express train, which injured
the deceased, it was error to submit the issue to the jury.
The supreme court held that the action of the lower court
was right, saying, ''There was certainly evidence on the issue
from which reasonable men might draw different conclu-
sions.''

In *Dalton* v. *Chicago etc. Ry. Co.,* 104 Iowa, 26, [73 N. W.
349], a highway crossing accident occurred at night. The
decedent was struck by a passing train of the defendant.
There were no witnesses to the conduct of the deceased. The
contrary not appearing, it was held that it must be pre-
sumed that the decedent exercised care on approaching and
going upon the crossing, and that whether the circumstances
were such as to overcome that presumption was a question
for the jury. Other cases to the same effect are *Eckhard* v.
*St. Louis Transit Co.,* 190 Mo. 593, [89 S. W. 602, 608] ; *Lewis*
v. *Rio Grande Western Ry. Co.,* 40 Utah, 483, [123 Pac. 98,
99] ; *Lotz* v. *Baltimore & O. Ry. Co.,* 247 Pa. 206, [93 Atl.
274] ; *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 159,
[53 L. Ed. 453, 29 Sup. Ct. Rep. 270, see, also, Rose's U. S.
Notes] ; *Korab* v. *Chicago etc. Ry. Co.,* 149 Iowa, 711, [41

L. R. A. (N. S.) 32, 38, 128 N. W. 529]. In the last case cited in which no witnesses appeared to testify to the accident, the court set aside a directed verdict in favor of the defendant, and held the decedent's administrator entitled to the benefit of the presumption of due care on the part of the deceased, saying: "If the record is such that, under the rule to which we have referred, a presumption of due care obtains, then proof of an act which may, or may not have been negligent, according to the circumstances under which it was done, will not justify a holding as a matter of law that the presumption of due care is thereby rebutted."

[8] The respondent contends that we should view the evidence as presenting only a question of probabilities, and cites *Tremelling* v. *Southern Pac. Co.*, 51 Utah, 189, [170 Pac. 80, 83], to the effect that "if the probabilities are equally balanced that the accident was produced by a cause for which the defendant is responsible, or by one for which he is not, the plaintiff must fail." This principle of law is more applicable as a rule to guide the jury in its deliberations upon the facts than it is as a rule to guide the appellate court in passing on the sufficiency of the evidence. (*Peters* v. *McKay*, 136 Cal. 73, 76, [68 Pac. 478].) The foregoing cases bearing on the point and others which have been examined by us present facts with many essentials similar to the circumstances surrounding the accident in which Ross was killed. In few, if any, were the facts as strong. Yet the action of the trial courts in refusing to direct verdicts for the defendants was upheld on the one hand, and the granting of such relief was reversed on the other.

In the instant case, the decedent was a traveler. The plaintiff sought to introduce evidence to establish that the decedent Ross, on leaving his friend at her doorstep, a few minutes before he was killed, stated to her that he was going to his home, the purpose being to show that his intended route would take him across the tracks of the defendant, and that he was a traveler crossing the street when killed, and not a trespasser suddenly approaching the car from the west, and attempting to steal a ride, as was suggested by the defense, at the trial. This testimony was excluded by the court. Whether or not the action of the trial court, in refusing to admit the declaration as to the boy's intention,

was error, we are of the opinion that in the absence of testimony the jury had the right to assume that he was going to his home and was therefore a traveler, rightfully upon the streets. The hour of the night, the circumstances that he had just escorted his friend to her home, coupled with the further facts that he was a sober, industrious, working boy, and that his home was situated in a southerly and westerly direction, across the intersecting tracks of the company at Ashby and Telegraph Avenues, in almost a direct line from the point where he left his companion—all these circumstances readily give rise to such an inference. The intersection of the streets mentioned, according to the testimony, was well lighted, and the car was equipped with a headlight. The details of the accident, it is true, were few, but they were related by a defendant, who was also an employee of the railway company. He was an interested witness, and although he testified that he did not see the boy before the accident or at any time, yet, there being no obstruction to the view, the jury would have the right to closely scrutinize his testimony, in view of all the circumstances, to see if he was on the lookout for approaching pedestrians, as his testimony would seem to imply. (*Wahlgren* v. *Market St. Ry. Co.,* 132 Cal. 656, 665, [62 Pac. 308, 64 Pac. 993].) The motorman was also guilty of a violation of the rules of the company requiring him to bring his car to a full stop before crossing Dwight Way and the Ashby Avenue tracks. After passing the former street, he had "given his car a big kick," and it was coasting on the downgrade toward the car-house, on its last trip late at night, at a rate of speed which, if the testimony of the motorman be true, would not be considered excessive. By his own testimony, Serpico would make it appear that when about one hundred feet north of the Ashby Avenue tracks, he retarded the speed of his car from fifteen or sixteen miles an hour to four or five miles an hour, at which speed he was going when he was about twenty-five feet north of the crossing. He then "gave it more juice." It is very easy to infer from the circumstances that young Ross was acquainted with the rule requiring the cars to stop before crossing intersecting tracks. He had been living in the vicinity some little time, and it is almost, if not quite, a matter of common knowledge that the street-cars do slow their speed materially, or come to

a full stop, at such points. **[9]** The settled practice of stopping a street-car at a particular place becomes a rule of conduct upon which the public has a right to rely to a reasonable extent, and a departure from such rule is a vitally important element in determining the question of negligence, for it constitutes a departure from the standard of safety which the defendant has itself adopted. (*Godfrey v. Old Colony St. Ry. Co.*, 223 Mass. 419, [111 N. E. 878]; *Kostuch v. St. Paul City Ry. Co.*, 78 Minn. 459, [81 N. W. 215]; *McDivitt v. Des Moines City Ry. Co.*, 141 Iowa, 689, [118 N. W. 459, 462].) It may be inferred from circumstantial evidence that a deceased person had knowledge of a rule governing the operation of cars, and that he put some reliance upon it. (*Boston & M. R. R. v. Rafalko*, 228 Fed. 440, [143 C. C. A. 22].) In addition to the presumption, in the instant case, the motorman by the operation of his car gave every indication that it was his intention to comply with the rule. He slowed his car from a rate of speed at which he was coasting toward the car-barn, as he approached the crossing. His failure to finally stop, as his handling of the car indicated he would, tended to show negligence on his part. (*Simoneau v. Pacific Electric Ry. Co.*, 159 Cal. 494, 503, [115 Pac. 320].) **[10]** Ross was entitled to act upon the belief that the operator of the street-car would, upon his part, obey the rules of the company, and run the car at the speed which was customary at the particular place, and that he would give the usual warnings and signals, and take the usual precautions to avoid injury to others. He was not, in law, bound to believe that the car, provided he saw it some distance away, would not check its speed as it drew near the intersecting crossing. (*Scott v. San Bernardino Valley Traction Co.*, 152 Cal. 604, 610, [93 Pac. 677].) **[11]** Under the circumstances of this case, we do not feel that it can be said, as a matter of law, that the motorman ought not reasonably to have expected that persons might attempt to cross the track at a point which would in fact be dangerously near, but which to them would not appear so. The circumstances might be such as to charge him with knowledge of this likelihood. Due care would be required of him in such case, to anticipate such probability, and the results reasonably arising from the consequences of his own action. It should have been left to

the jury to say whether or not the manner in which he operated the car at the Ashby crossing was such that he should have assumed that persons might ignorantly attempt to cross in front so near the approaching car as to make a collision probable. (*Bresee* v. *Los Angeles Traction Co.,* 149 Cal. 131, 138, [5 L. R. A. (N. S.) 1059, 85 Pac. 152]; *Runnels* v. *United Railroads,* 175 Cal. 528, 533, [166 Pac. 18]; *Drouillard* v. *Southern Pac. Co.,* 36 Cal. App. 447, 451, [172 Pac. 405]; *Haughey* v. *Pittsburg Ry. Co.,* 210 Pa. St. 363, 366, [59 Atl. 1110]; *Phillips* v. *Milwaukee & N. R. Co.,* 77 Wis. 349, [9 L. R. A. 521, 46 N. W. 543]; *Tegels* v. *Great Northern Ry. Co.,* 120 Minn. 31, [138 N. W. 945].)

[12] The plaintiff's son being dead, and there being no eye-witnesses to the accident, the plaintiff was compelled to rely upon the motorman, Serpico, who was also a defendant in the action, to establish the circumstances surrounding the accident. He did not appear at the trial in person, but his deposition was read in evidence. Therein he testified that when his car reached the car-barn immediately after the accident a shoe, admitted to be one the deceased was wearing, was found back of the pony truck of the car. Serpico testified that at that time, "I was so nervous and mixed up—I know something had happened. I don't know if I picked up the shoe or the conductor give it to me. . . . I put it in a garbage can what the city uses . . . it has a tin lid that lifts up and down. . . . After it was in there of course it was out of sight." When this testimony was offered the court sustained the objection of the defendants that it "bore no relation whatever to the case," and excluded the testimony from the jury. Only this general objection was made. We think this was error. Serpico was a defendant, and the employee of his codefendant. A strong inference arising from his action, and certainly a most plausible explanation of his conduct, is that he was attempting to conceal evidence, which in his mind had an important bearing upon the "something" that had happened. His conduct was indicative of a belief, and in the nature of an admission, that his cause could best be served by suppressing the evidence of the injury. [13] Testimony showing, or tending to show, an attempt on the part of a party to a suit to cover up, conceal, or otherwise prevent pertinent facts from being presented to the court or jury is competent and proper.

Such efforts may be shown, not as part of the *res gestae,* but in the nature of an admission, the effect of which is a matter for the consideration of the jury. (*Silva* v. *Northern Cal. Power Co.,* 32 Cal. App. 139, 146, [162 Pac. 412] ; *Clark* v. *Tulare Lake Dredging Co.,* 14 Cal. App. 414, 437, [112 Pac. 564].)

The judgment is reversed.

Richards, J., and Gosbey, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1920.

All the Justices concurred, except Olney, J., who voted for granting of petition.