[Civ. No. 3466.  Third Appellate District.—June 21, 1928.]

BARTON L. GORMAN, Respondent, v. COUNTY OF SACRAMENTO, Appellant.

J. J. Henderson, District Attorney, Neil R. McAllister, District Attorney, Wm. A. Green, J. F. O'Shea and Alex J. Oshen, Deputies District-Attorney, for Appellant.

J. Q. Brown, Gerald R. Johnson and Hinsdale, Otis & Johnson for Respondent.

PRESTON, J., *pro tem.*—This is an appeal by defendant, County of Sacramento, from a judgment entered against it upon a verdict of a jury in the sum of $10,000 and reduced to $7,500.

The plaintiff, Barton L. Gorman, brought this action to recover damages for the death of his minor son, George Andrew Gorman, charging that his son's death was caused by the negligent manner in which the defendant, County of Sacramento, maintained a certain bridge across a canal or slough near the town of Ryde. It is the claim of plaintiff and respondent that the boy, while riding his bicycle along the public highway and over this bridge, met his death by falling from the bridge into the water below and drowning, and that the fall was caused by the lack of guard-rails upon the bridge.

Many contentions are made for a reversal of the judgment.

■ Appellant first contends that the evidence is insufficient to justify the verdict of the jury.

It was stipulated at the trial that the boy met his death by drowning. The boy, at the time of his death, was of the age of ten years and seven months, in good physical condition and in full possession of all his faculties. He resided with his mother near the town of Ryde in Sacramento County. In order to reach the town of Ryde from the residence of the deceased, it was necessary to cross a wooden bridge over a canal or slough which contained about seven feet of water. This bridge and road leading from the residence of the deceased to Ryde was maintained and controlled by said defendant and appellant, County of Sacramento. For some time prior to his death it had been the habit and custom of the boy to ride his bicycle across this bridge to the postoffice at Ryde every evening between 6:00 and 7:30 P. M. for the purpose of getting the mail. The bridge in question is located about two-fifths of a mile from Ryde and on an "S," or double turn, and at the time of the accident was without guard-rails, approach rails, warning lights or signals of any kind. On the evening of April 3, 1924, the boy rode his bicycle across this bridge to the postoffice at Ryde, called for the mail as usual, and received the daily paper; he tied the paper on to his bicycle, mounted his bicycle and started for home. At the time he left the

postoffice it was between 6:30 and 7:00 P. M. and it was getting dark. He was never seen alive after this time. Not reaching home at the usual time, a search was instituted for him and his body was found in the middle of the canal about midway under the bridge, and his bicycle at a point near the bridge, in the canal, and about one-third of the way across and a few feet from the body. The boy's hands were uplifted as if he had been struggling. There were no marks on the body or bicycle, and nothing at all to indicate any act of violence or injury. There was no current in the water of the canal at the time, it being practically stagnant. On both sides of the approach to the bridge along the bank of the canal was a heavy growth of willows and underbrush.

Appellant admits that the boy met his death by drowning in this canal, and also admits there were no guard-rails, approach rails, or warning lights or signals on the bridge, but argues that the manner and cause of the boy's death rests in surmise and conjecture, and that the evidence fails to establish that his death was proximately caused by the negligence of the County of Sacramento. Appellant further argues that deceased might have stopped to play near the bridge on the banks of the stream and fallen into the water, or might have been forced into the stream from the road by a reckless motorist, or he might have stopped on the bank of the stream to fish and fallen in; that it is just as reasonable to assume that the boy met his death in one of these ways as it is to contend that he met his death through the negligence of appellant.

We are unable to agree with appellant upon any of its theories as to how the boy might have met his death. The foregoing argument of appellant is one that could have been more appropriately addressed to the jury that tried the case, whose duty it was to weigh the evidence, than to a reviewing court, whose duty is to pass upon the sufficiency of the evidence to support the conclusions reached by the jury.

The jury having determined that deceased met his death through the negligence of appellant in failing to place guard-rails on said bridge, the rule of law is, of course, well settled that all reasonable inferences are to be indulged in support of the conclusion reached by the jury.

█ Furthermore, when two or more inferences can be reasonably deduced from a certain set of facts or circumstances, a reviewing court is not permitted to substitute its deductions for those of the jury. (*Wilbur* v. *Wilbur*, 197 Cal. 1 [239 Pac. 332].)

█ It is true, as contended by appellant, that by proving a defendant's negligence, without in some way fastening that negligence to the injury, a case is not made out. (*Union Investment Co.* v. *San Francisco Gas etc. Co.*, 168 Cal. 58 [141 Pac. 807].) This rule, however, does not require demonstration of the connection between the proved or admitted negligence and the resulting injury. It is not necessary that an eye-witness be produced to testify directly to the fact. The connection may be made by circumstantial evidence in the same way that any other fact can be proved. (*County of Alameda* v. *Tieslau*, 44 Cal. App. 332 [186 Pac. 398]; *Ross* v. *San Francisco-Oakland T. R. Co.*, 47 Cal. App. 753 [191 Pac. 703].)

█ There is also another well-recognized rule of law applying to accidents like the one in the case at bar, to wit: that deceased is presumed to have exercised ordinary care for his own safety. This rule is fully and clearly stated by Mr. Justice Henshaw in the case of *Crabbe* v. *Mammoth Channel G. M. Co.*, 168 Cal. 500, at page 506 [143 Pac. 714, 716] as follows: "Where death is occasioned under circumstances such as this, without eye-witnesses, the law comes to the aid of the plaintiff who is pressing a suit for damages for the death, and that law is found in the presumption of the Code of Civil Procedure, namely, that a person takes ordinary care of his own concerns. (Sec. 1963, subd. 4, Code Civ. Proc.) This is a controvertible presumption, it is true, but until controverted it is evidence in accordance with which the jury is bound to decide." See, also, *Boyle* v. *Coast Imp. Co.*, 27 Cal. App. 714 [151 Pac. 25]; *Kreitzer* v. *Southern Pacific Co.*, 38 Cal. App. 654 [177 Pac. 477], sec. 1961, Code Civ. Proc.; *Ross* v. *San Francisco-Oakland T. R. Co.*, *supra*.

In applying this principle of law to personal injury cases the supreme court of the United States, in the case of *Baltimore & P. R. Co.* v. *Landrigan*, 191 U. S. 461 [48 L. Ed. 262, 24 Sup. Ct. Rep. 137, see, also, Rose's U. S. Notes], said: "The presumption is founded on a law of

nature. We know of no more universal instinct than that of self-preservation, none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming, and death. There are few presumptions based on human feelings or experience that have surer foundation. . . . "

When recourse must be made to this rule of human conduct in determining the question of responsibility in cases of accident like the one in the case at bar, it is fair to assume, there being no evidence in the record to the contrary, that when deceased met his death he was exercising due and proper care for the protection of his person and the preservation of his life. This presumption is sufficient to constitute *prima facie* evidence that the deceased at the time he was drowned was free from contributory negligence. (*Fleenor* v. *Oregon Short Line R. Co.*, 16 Idaho, 781 [102 Pac. 897] ; *Ross* v. *San Francisco-Oakland T. R. Co.*, *supra.*)

This is a complete answer to most all of the theories advanced by appellant as to how the boy may have gotten into the canal, and especially the theory that the boy may have stopped to play or fish near the bridge and fallen in. There is no evidence, and not a single circumstance, that would indicate that any such thing happened, so this is a mere theory of appellant, which finds no support whatever in the evidence and, therefore, amounts to nothing. The theory advanced by appellant that the boy may have been forced off of the bridge by a reckless motorist is also answered by the fact that there is no evidence and not a single circumstance revealed by the record to indicate that this happened. This theory is further answered by the fact that, even if the boy had been struck by an automobile, he would not have been knocked off the bridge if proper guardrails had been maintained thereon. Furthermore, contributory negligence was not even pleaded by the appellant in this case.

We think the only reasonable inference that can be deduced from all the facts and circumstances revealed by the record is that deceased met his death by falling from the bridge into the canal and drowning, and that the fall was caused by the lack of guard-rails on said bridge. In fact, we do not believe, when all the evidence in the record is carefully considered, that any reasonable person would

doubt for a moment that the boy met his death by riding his bicycle off of the bridge into the water. All surrounding facts and circumstances point unerringly to this conclusion.

■ Appellant next contends that the trial court erred in admitting evidence of the cautious habits of the deceased. There is no merit in this contention. As we have already seen, there were no eye-witnesses to the fatal accident, and respondent relied entirely upon circumstantial evidence to show that deceased met his death by reason of the negligence of the appellant. Therefore, evidence of the boy's cautious habits was admissible as tending to throw light upon his probable conduct at the time of the accident. The weight to be given to this class of evidence was a question solely for the jury. (*Wallis* v. *Southern Pacific Co.*, 184 Cal. 662 [15 A. L. R. 117, 138, 195 Pac. 408]; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, at p. 281 [201 Pac. 599].)

■ Appellant next contends that the court erred in giving the jury the following instructions: "I instruct you that if you find that under all the circumstances of this case the failure of the county to provide adequate guard rails or warning signals at this bridge rendered this bridge dangerous and defective, which condition was known to the county officers in authority, who failed to alter this condition within a reasonable time after obtaining such knowledge, and that this condition of said bridge was the negligence which proximately caused the death of George Gorman, then you shall render judgment for the plaintiff and that any evidence which you may have heard regarding the construction and maintenance of other like bridges in the vicinity by the county of Sacramento is no evidence on the question of the particular bridge involved in this action."

Appellant contends that this instruction is erroneous for two reasons: First, that it invaded the province of the jury by instructing them upon a question of fact. There is no merit in this contention. The first part of the instruction which is criticised is in almost the identical language of the statute under which this action is brought (Stats. 1923, chap. 328, sec. 2, p. 675) and when read in its entirety is not subject to the criticism made against it, and did not invade the province of the jury. ■ Second, the trial

court permitted the appellant, over the objection of respondent, to introduce evidence to the effect that other bridges over similar canals in Sacramento and Yolo Counties had no guard-rails thereon. After permitting this evidence to be introduced before the jury, appellant claims that it was error for the trial court to instruct the jury to disregard all evidence relative to other Sacramento County bridges in the vicinity of the bridge in question. In the first place, the testimony referred to should not have been admitted. To permit the appellant to prove that the bridge in question was of a common design, adopted by its board of supervisors, and, therefore, free from all negligent construction or maintenance because it followed the same plan, is not competent testimony. The jury would be led thereby to believe that negligence would depend upon the facts surrounding the bridge, taken in conjunction with all the Sacramento County bridges. If this were allowed it would violate the very primary principles of the law of negligence. Negligence depends upon all the facts and circumstances surrounding the *particular case*. If appellant's theory be correct, the board of supervisors, having once adopted a common design and plan of construction and maintenance of bridges, could never be negligent if they followed the same design and plan on other bridges. This is certainly not the law. The trial court, no doubt, realized when the evidence was concluded that this testimony should not have been admitted, and gave the instruction above quoted, the last part of which was, in effect, striking out the objectionable evidence, and this action was entirely proper. The evidence being incompetent in the first place, we cannot see how appellant could be prejudiced by the court instructing the jury to disregard it.

Appellant next contends that the court erred in permitting respondent to introduce evidence that other accidents had occurred at this bridge—that is, that at least four automobiles had fallen off of this bridge into the canal prior to the time the boy was drowned.

We think the evidence was properly admitted as tending to show the dangerous character of the bridge and the cause of the boy's death and, furthermore, it tends to bring home to appellant knowledge of the dangerous condition of said bridge. (*Long* v. *John Breuner Co.*, 36 Cal.

App. 639 [172 Pac. 1132]; *Dyas* v. *Southern Pacific Co.*, 140 Cal. 296, at p. 305 [73 Pac. 972]; *Malone* v. *Hawley*, 46 Cal. 409; 10 Cal. Jur. 827.)

■ Appellant also contends that the court erred in excluding evidence that farm machinery could not be moved across this bridge if guard-rails were maintained thereon. We think that no prejudice could have possibly resulted to appellant by the exclusion of this testimony. This bridge was on a public highway, used daily and constantly by the traveling public, both in automobiles, by teams and on foot, and certainly should not be stripped of all guard-rails, approach rails or other means of protecting the general public against danger, simply in order to accommodate some farmer who might at some time want to move heavy machinery across this bridge.

We find a complete answer to appellant's contention in the case of *Commonwealth* v. *Allen*, 148 Pa. St. 364 [33 Am. St. Rep. 833, 16 L. R. A. 148, 23 Atl. 1117], where this language is used: "As a general rule, highways and bridges are constructed for ordinary use in an ordinary manner and not for an unusual or extraordinary use, either by crossing at great speed, or by the passing of a very large and unusual weight." Certainly, appellant would not be excused for maintaining this bridge in an unsafe and dangerous condition for use by the traveling public, simply by saying that this dangerous condition was made necessary in order to accommodate some person or persons who might occasionally want to move heavy machinery over it.

■ Appellant further contends that the court erred in permitting evidence to be introduced that guard-rails were erected on the bridge in question subsequent to the accident.

The rule is well established that evidence of this character is inadmissible. (*Sappenfield* v. *Main Street etc. Ry. Co.*, 91 Cal. 62 [27 Pac. 590]; *Hager* v. *Southern Pacific Co.*, 98 Cal. 311 [33 Pac. 119]; *Turner* v. *Hearst*, 115 Cal. 401 [47 Pac. 129]; *Limberg* v. *Glenwood Lumber Co.*, 127 Cal. 598, at page 604 [49 L. R. A. 33, 60 Pac. 176]; *Webster* v. *Orr*, 174 Cal. 426, at page 428 [163 Pac. 361]; *Morris* v. *Sierra etc. Power Co.*, 57 Cal. App. 281, at page 296 [207 Pac. 262].) However, a careful examination of the record will show that the jury could not have been misled, nor

could appellant's rights have been prejudiced, by the evidence admitted on this subject. Mr. Eastman, an overseer of bridges and roads for the County of Sacramento, was produced by appellant and testified, among other things, that a common plan or design for all bridges of a similar character to the one in question, had been adopted by the Board of Supervisors. On cross-examination these questions were asked him by one of the attorneys for respondent: "Q. I will ask you, Mr. Eastman, if there is any bridge that you know of that is on a curve like that? A. Not with a double curve. Q. Not with a double curve,—I will ask you, Mr. Eastman, since this is the type of bridge common to this county, why you put guard-rails after this accident—." This question was objected to on the ground "that it was not proper cross-examination and on the further ground that it was incompetent, irrelevant and immaterial, and that it would go to show subsequent repairs, which was inadmissible." This objection, in our opinion, should have been sustained. However, after considerable discussion by court and counsel, the court overruled the objection, saying: "The objection, I think, should be overruled. Now, as I admonished the jury the other day or yesterday, in fact, this evidence is not for the purpose of showing any alteration in this bridge or for the purpose of admissions on the part of anyone that the original construction was faulty in any way, but this is cross-examination of Mr. Eastman, and is for the purpose of testing his knowledge of construction of bridges in this particular district, and the reason for the particular type of construction used." After the ruling and discussion, the question was again read to the witness and the witness answered: "Well, we thought of putting them up at that time on all bridges. Q. On all bridges? A. We thought of it and the farming people did not want them; they was always moving their heavy machinery across. That will answer for all of them. Q. Now, how long after George Gorman was drowned, Mr. Eastman, did you put side rails on this bridge? Mr. Green (one of the attorneys for appellant): May it be understood that I am objecting to all these questions on the grounds heretofore stated? . . . The Court: The objection will probably be good as to that. It is immaterial, I think, when they were erected. Objection sustained."

The court also sustained objections to similar questions propounded by respondent and made it plain to the jury, it seems to us, that evidence of subsequent repairs was not to be considered by them.

It is next contended by appellant that the county is not liable because there is no evidence to show whether the bridge was constructed first or the canal was constructed first. There is no merit whatever in this contention. The evidence shows that the bridge was repaired by the county and that it had charge of the maintenance of the bridge. Furthermore, the answer of appellant does not deny that the county had charge of the maintenance of this bridge.

It is also contended by appellant that the verdict is excessive. The jury, as above stated, returned a verdict of $10,000. A motion for a new trial was made upon a number of grounds, among them being that the verdict was excessive. After hearing the motion, the trial court made an order to the effect that if plaintiff would agree to a reduction of $2,500 in the amount of the judgment, the motion for a new trial would be denied. This was agreed to by plaintiff and a written stipulation to that effect filed, the judgment was reduced to $7,500 and the court thereupon denied the motion for a new trial.

The amount of damages in this kind of an action is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and the jury on the subject cannot be set aside unless the verdict is so plainly and outrageously excessive as to suggest at first blush passion, prejudice, or corruption on the part of the jury. (*Bond* v. *United Railroads*, 159 Cal. 270 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]; *Wiezorek* v. *Ferris*, 176 Cal. 353 [167 Pac. 234] *Varcoe* v. *Lee*, 180 Cal. 338 [181 Pac. 223]; *Reneau* v. *Hirsh*, 88 Cal. App. 1 [262 Pac. 1100], and cases there cited.)

The present case does not come within this rule. The trial judge has exercised his discretion and caused the judgment to be reduced to $7,500, and there is nothing in the record that would authorize us to disturb the judgment as it now stands.

■ Appellant, through counsel other than those who participated in the trial, has filed herein a supplemental brief, in which the question is raised for the first time, that the act of 1923 (Stats. 1923, p. 675, subd. 2) under which this action was brought, is *in pari materia* with the act of 1919 (Stats. 1919, p. 756) and, therefore, must be construed together, and that any of the provisions contained in the act of 1919, and omitted from the act of 1923, should, nevertheless, be read into the act of 1923.

The act of 1919 is relative to the liability of public officers, etc., the title reading: "An act relating to the liability in damages of the officers of districts, towns, cities, cities and counties, counties and of the State of California, for injuries to person or property resulting from defects and dangers in public streets, highways, bridges, buildings, work or property," etc. The title of the 1923 act reads: "(Section 1) An act limiting the liability of supervisors, city trustees, city councils, boards of education and school trustees, (section 2) and making counties, municipalities and school districts liable for the negligence of their respective officers in certain instances, and (section 3) providing for the payment of costs of actions in certain instances."

As the title indicates, the act of 1923 consists of three different parts, the first part further limiting the liability of the supervisors and other officials, and further protecting them from personal actions; the second part, as the title also indicates, creates *an entirely new and different liability, to wit: the liability of the county,—making the county a legal entity, liable for the negligence of its officers in certain cases.* An examination of the 1919 act shows that a person suing an officer for negligence has not only to plead, but also to prove, that the injury and damage complained of was sustained while such public street, highway, bridge, building, work, or property was being carefully used and that due care was being exercised to avoid damage due to such condition; or, in other words, this act changes the general rule that the burden of showing contributory negligence is upon the defendant, and requires an affirmative showing on the part of the plaintiff that he was using the road, bridge, or street with due care. No such provision or requirement is found in the act of 1923, and it is reasonable to assume that the legislature did not intend to place it therein, or to

change the general rule as to the proof of contributory negligence, when a county is being sued. If the 1923 legislature had intended that the same burden be placed upon a litigant, who was seeking recourse against the county as a legal entity, as those placed upon one seeking recourse against *its officers in their personal* capacities, it had the 1919 act before it and could have incorporated all of its provisions in the second subdivision of the 1923 act. The ·law presumes that the legislature, in passing this 1923 act, fully investigated all acts and matters in regard thereto, and were familiar with the acts of previous legislatures. (23 Cal. Jur. 783; *Old Homestead Bakery* v. *Marsh,* 75 Cal. App. 247 [242 Pac. 749].)

Conceding that appellant's position is sound that the act of 1919 and section 1 of the act of 1923 are *in pari materia;* nevertheless, we fail to see how section 2 of the act of 1923, and the one under which this action is brought, can be brought within that doctrine, for section 2 is complete in itself and needs nothing read into it to make it a complete piece of legislation. If we read into section 2 of the act of 1923 the rule relative to the proof of lack of contributory negligence, or as it is termed the "due care clause," contained in the act of 1919, we would be adding something which it is clear to our minds, the legislature did not intend should be included therein.

Complaint is also made that other instructions given in the case were prejudicial to the rights of appellant. We have examined all the instructions with care and we think the instructions, as a whole, were more favorable to appellant than to the respondent, and there is no prejudicial error therein.

A careful review of the entire evidence leads us to the conclusion that the judgment must be affirmed, and it is so ordered.

Hart, Acting P. J., and Plummer, J., concerned.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 20, 1928.

All the Justices present concurred.